THE PRESTON NATIONAL BANK OF DETROIT v. THE GEORGE T. SMITH MIDDLINGS PURIFIER COMPANY ET AL.

[See 84 Mich. 364.]

*Assignment of accounts—Evidence—Estoppel—Receivers—Compensation.*

1. A corporation secured a bank by an assignment to it of $150,-000 of good and collectible accounts, then existing or thereafter to be acquired. And it is held that parol proof is admis-

sible to show in what sense the parties used the word "accounts," and what they understood to be included within it; and to this proof and the surrounding circumstances the court will look in determining said questions.

2. The corporation had placed upon its books certain accounts for goods shipped to consignees, to be paid for when sold, charging the consignees upon shipment, and crediting them with payments and discounts. The evidence disclosed that both the party who represented the corporation in making the assignment, and the cashier of the bank, understood and agreed that these accounts were included in the assignment. And it is held that, the corporation having treated these accounts as within the terms of the assignment, and obtained the loans from the bank, which the assignment was made to secure, upon the representation that said accounts were within the meaning of that term as used in the assignment, and the bank having relied upon that fact in making the loan, the corporation is estopped to assert the contrary.

3. There also appeared upon the corporate books certain accounts for goods sold under special contract, and for which notes had been taken. The contracts provided that title to the property should remain in the company until paid for, and that any notes taken should not be considered as payment, but only as evidence of indebtedness, and should not constitute a waiver of the right to a mechanic's lien. And it is held that said accounts were within the terms of the assignment.

4. The bank filed a bill to enforce the assignment, and secured a decree for the collection of the accounts by the receivers of the corporation, and that the bank should have a lien upon the money thus collected. And it is held that, the expense of making such collections having been incurred under the express decree of the court, it is inequitable that the receivers should go without compensation, or that they should be paid out of funds which should go to unsecured creditors, and that they are entitled to compensation for their services out of the funds belonging to the bank which they have collected.

Appeal from Wayne. (Hosmer, J.) Argued October 9 and 10, 1894. Decided November 20, 1894.

Petition by complainant to compel the payment of certain moneys claimed under a prior decree. Complainant appeals. Decree reversed, and one entered in this Court

in accordance with the opinion. The facts are stated in the opinion, and in 84 Mich. 364.

*Julian G. Dickinson (John D. Conely* and *Alfred Russell,* of counsel), for complainant.

*Thomas A. Wilson (Edwin F. Conely,* of counsel), for defendants.

GRANT, J. The assignment and facts out of which this controversy has arisen will be found in 84 Mich. 364. Under that decision a decree was entered giving the complainant "a lien upon all moneys collected by the said defendants Emerson and Eldred, as assignees and as receivers, upon said accounts, and upon all notes, bills receivable, lands, goods, chattels, and other things taken in compromise, satisfaction, or partial or complete discharge or payment of said accounts. The receivers proceeded under this decree to collect the various accounts and debts due to the purifier company. In keeping their accounts, and in their report to the court, the receivers entered and kept the amounts received in several classes, marked, respectively, Schedules A, B, C, D, E, F, G, and H.

Schedule A is entered as—

"Accounts appearing on the books of the George T. Smith Middlings Purifier Company, January 14, 1890, which were for merchandise sold, upon which the whole or a part has been received by R. H. Emerson and Z. C. Eldred, receivers."

"B": "Accounts appearing on the books of the company for which notes had been given, and which notes were overdue and unpaid at the time of the assignment (January 14, 1890), upon which the whole or a part has been received by the receivers."

"C": "Accounts appearing on the books of said company, January 14, 1890, which were for mill contracts incomplete at date of assignment, upon which the whole or a part has been received by the receivers."

"D": "Accounts appearing on the books of said com-.

pany which were for merchandise in the hands of other parties on sale for the benefit of said company, upon which the whole or a part has been received by the receivers."

"E": This is the same as Schedule A, excepting that nothing has been received upon the accounts.

"F": This is similar to "B," but nothing has been paid upon the notes which had been given, and were overdue and unpaid at the time of the assignment.

"G": "Accounts which were for mill contracts which were incomplete at date of assignment."

"H": This is similar to "D," but nothing has been paid upon the accounts.

It is conceded that the accounts marked Schedules A and E come within the terms of the assignment to complainant. The receivers contended that the other accounts were not within its terms, and refused to pay them over to the complainant, whereupon it filed this petition to compel such payment. Issue was joined, proofs taken, and the court below entered a decree sustaining the contention of the receivers.

For the sake of convenience, we may group the disputed accounts under two heads, viz., special-contract accounts and consignment accounts.

These special contracts were written, and provided that the company agreed to deliver to each vendee the machinery and materials for a flouring mill, and to put them in the mill. The vendee agreed to pay a certain amount upon the execution of the contract, another when the machinery was ready to ship, another during the construction of the mill, another when the mill was ready to start, and the remainder was to be evidenced by executing and delivering to the company negotiable promissory notes, which were to be secured by a first mortgage upon the premises. It was further agreed that the title to the machines, machinery, and material should remain in the said company until fully paid for, and that if notes were given they

102 MICH.— 30.

should not be considered as payment, but only as evidence of indebtedness. It was further provided that the taking of such notes, or security therefor, should not waive the right of the company to a mechanic's lien. The notes did not pay these accounts, and they were still as valid, as accounts, as they would have been had no notes been given. The retention of the title to the goods as security for the payment of the purchase price did not operate to change the character of the accounts. If the accounts had all been of this kind it would be unreasonable to hold that the assignment conveyed nothing, yet such would be the logical conclusion of the defendants' contention. Such construction would have enabled the company to defeat the security altogether by making such arrangements with its customers after it was given.

The consignment accounts were also evidenced by written contracts. The goods were shipped to consignees, to be paid for when sold. The prices were fixed, the consignees had the entire charge and control over the goods, paid their own storage and other expenses, and were to render a quarterly account of the goods sold. Of this latter class was an account against W. R. Dell & Son, of London, England, who had the entire charge of the business upon the continent of Europe, amounting to over $29,000 at the time of the assignment. All these accounts appeared upon the books of the company, and were all kept in the same manner. Dell & Son were charged upon the books with goods sold, and were credited with payments and discounts allowed them.

It is contended by counsel for the receivers that the contract of assignment covers only such accounts as were collectible, viz., such accounts as could be sued upon and judgment obtained by the production in evidence of the books; such as had become a positive obligation against

the debtor, where there was an unconditional liability on the part of the debtor to pay. If the word "account" had an inflexible technical meaning, and that were the one contended for, there would be force in this contention. But it has not. Webster defines it to mean—

"A registry of pecuniary transactions; a written or printed statement of business dealings, or debts and credits, and also of other things subjected to a reckoning or review."

Bouvier defines it as—

"A detailed statement of the mutual demands in the nature of debt and credit between parties, arising out of contracts or some fiduciary relation," and cites the authorities for his definition.

Parol proof is therefore admissible to show in what sense the parties used it. and what they understood to be included within it. To this proof and the surrounding circumstances the court will look to ascertain the intention of the parties and determine in what sense they use words of flexible meaning.

It is clearly established by the evidence that Mr. Smith, who represented the company, and Mr. Hayes, the cashier of the bank, understood and agreed that these accounts were included in the assignment. Smith, in order to obtain large loans at the bank, included in his representations the accounts now in dispute, and referred to these foreign accounts, and particularly to those of Dell & Son and of one Tyson, who had a large account in Australia. Complainant wrote to ascertain the financial standing of Tyson. Dell & Son were not ordinary agents for the sale of goods for their employer. But we are not required to interpret the contract between them and the company. It is enough to say that the company placed these upon its books as accounts, treated them as accounts within the terms of the contract, obtained the loans upon the

representation and reliance that they were, and that both it and its assignees are thereby estopped to assert the contrary. The receivers have no rights either at law or in equity which the purifier company did not have, and they can make no defense in this suit which the company could not make were it the sole party.

It is also contended that the receivers are not entitled to compensation for their services out of the funds belonging to complainant which they have collected. We think otherwise. The expense incurred in collecting has been done under the express decree of this Court, and it is inequitable that the receivers should go without compensation, or that they should be paid out of funds which should go to unsecured creditors.

The decree is reversed, and decree entered in this Court in accordance with the above opinion, with the costs of both courts to the complainant.

The other Justices concurred.