MacKINNON BOILER & MACHINE CO. *v.* CENTRÀL MICHIGAN LAND CO.

1. CONTRACTS—AMBIGUITY—EVIDENCE—PAROL EVIDENCE—ADMISSIBILITY—INSTRUCTIONS.

    Plaintiff made a contract with defendant to construct an apparatus, included in which were retorts. The evidence on the part of plaintiff tended to show that the purpose for which it was to be used was not disclosed; that it was made from plans and specifications furnished by defendant; and that it was accepted. The evidence on the part of the defendant was to the effect that the plans and specifications were furnished plaintiff and it was left to plaintiff's judgment to furnish the proper machinery; and that the retorts were not constructed so as to be adapted for the purpose for which they were intended. The brief of defendant's counsel admitted that the contract was not entirely contained in the plans and specifications furnished plaintiff. *Held*, that the terms of the contract made were ambiguous and that parol evidence was admissible to explain them, and that a requested instruction that the term "retort" meant a gas-tight receptacle was properly refused.

2. TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE.

    In an action for the price of certain apparatus manufactured for defendant, plaintiff claimed pay for certain extras. Defendant gave evidence tending to show that the claim for extras was not charged upon plaintiff's books of account until

after the controversy arose over the contract, and that plaintiff only demanded the balance of the contract price. *Held*, that a request to charge calling attention only to a portion of the testimony bearing upon the issue was properly refused.

3. APPEAL AND ERROR—BILL OF EXCEPTIONS—OMISSIONS.
   Where the bill of exceptions does not contain a statement of the judgment entered, defendant cannot complain of an instruction in regard to the recoupment of damages for breach of the contract sued upon; since if the jury decided that plaintiff had complied with the terms of the contract the question of damages was immaterial.

4. WITNESSES—COMPETENCY—EVIDENCE—ADMISSIBILITY.
   The admission of evidence of a witness that he was present a part of the time when the details of a contract were being discussed, and that defendant's agents did not make certain statements testified to by them upon the trial, was properly received; since it cannot be assumed that the witness intended to testify as to conversations had in his absence.

Error to Bay; Collins, J. Submitted November 17, 1908. (Docket No. 113.) Decided March 16, 1909.

Assumpsit by the MacKinnon Boiler & Machine Company against the Central Michigan Land Company for goods sold and delivered. There was judgment for plaintiff, and defendant brings error. Affirmed.

*T. A. E. & J. C. Weadock*, for appellant.

*James E. Duffy* (*Fred W. De Foe*, of counsel), for appellee.

The defendant is the owner of a large tract of land in Ogemaw and Roscommon counties. It became interested in the production of turpentine through a process known as the "destructive distillation of wood." The pine stumps were utilized for this purpose. One Mr. Coon had a small plant at Roscommon. He and one Dr. Thomas, representing the defendant, consulted an engineer, Mr. Lumgear, who made a tracing from a pencil sketch, made by Mr. Coon, of the machinery and appa-

ratus required in the construction of the plant.    Dr. Thomas and Mr. Coon took this tracing or sketch to the plaintiff, and after some negotiations plaintiff made a proposition by letter under date of January 31, 1906. Upon further investigation by the defendant's agents other things were found necessary, and on February 5, 1906, the plaintiff submitted to Mr. Coon the following proposition:

"February 5, '06.

"Mr. W. M. Coon,
    "Roscommon, Mich.
    "*Dear Sir:*  We purpose to furnish you, f. o. b. Bay City, the following:   6 retorts 4 ft. 6 in. diameter, 20 ft. long, $\frac{1}{4}$ in. plate in shell and rear head.   $\frac{3}{8}$ in. plate in front head.   $2\frac{1}{2}$ in. by $2\frac{1}{2}$ in. by $\frac{3}{8}$ in. angle around front end.   Trough on bottom of each retort.   8 in. diameter open top dome 10 in. high on each shell.   3 in. by 2 in. by $\frac{5}{16}$ in. angle reinforced with bar iron, 18 in. track gauge inside and full length of each retort.   Front door fastening to angle with hinges and $8\frac{3}{4}$ in. studs.   No 12 sheet steel thimble to go over front end of each retort.   12 cars 19 ft. 10 in. long over all, each with five sets 7 in. diameter, 2 in. face truck wheels, with $1\frac{1}{2}$ in. square axles.   Bottom of cars made of No. 10 sheet steel and 2 in. by 2 in. by $\frac{1}{4}$ in. angles.   Sides of No. 16 sheet steel with 2 in. by 2 in. by $\frac{1}{4}$ in. angles.   1 transfer car 9 ft. wide, 18 ft. long, frame made of 4x6 timbers.   Car to have 8 18 in. diameter car wheels with $1\frac{1}{2}$ in. diameter shafts.   12-lb. rail, 18 in. track gauge, on top of car.   Car fitted with gears, frictions, shafts, etc., all in accord with drawing you submitted.   6 coolers 4 ft. 6 in. diameter, 20 ft. long with back head and front door all of No. 10 sheet steel.   Track 18 in. gauge in bottom, made of 3 in. by 2 in. by $\frac{5}{16}$ in. angle, reinforced with bar iron.   1 set 4 ft. bar grates to cover space 12 ft. wide.   24 T. arch bars $1\frac{1}{4}$ in. thick and reinforcement lug 1 in. thick.   7 14 in. 16 in. back arch frames and doors.   5 18 in. diameter, 16 ft. long stacks made of No. 14 sheet steel, with hand at top and bottom and necessary eye bolts.   All for the sum of two thousand seven hundred eighty-eight dollars ($2,788.00).
                    "Yours truly,
                        "H. D. MacKinnon."

On the same date the plaintiff, through Mr. MacKinnon,

wrote a letter to the defendant agreeing to deliver the machinery f. o. b. Bay City within 60 days. This proposition was accepted, the goods constructed and shipped in May. The retorts and other machinery were installed and put in operation. Defendant paid plaintiff $1,500 on the contract. When the retorts were received at Nolan and unloaded from the cars, defendant claims that the retorts were not in accordance with the contract, that they were not gas-tight, that they caulked them, hoping that they would serve the purpose for which they were intended, but that they did not. Defendant refused payment, and thereupon plaintiff brought this suit to recover the balance due upon the contract and for certain extras. Defendant with its plea of the general issue gave notice of recoupment for damages resulting from the failure of the plaintiff to perform its contract. Plaintiff had verdict and judgment, but what the amount of the judgment was the record fails to show.

GRANT, J. (*after stating the facts*). 1. Without objection the agents of the respective parties who made this contract for their principals were all permitted to state fully the negotiations, conversations, and parol understandings or agreements as to the construction of the retorts, etc., specified in the contract. The court was requested by the defendant to instruct the jury that the word "retort," specified in the contract, meant a gas-tight vessel, and that parol evidence showing that a different retort was agreed upon was incompetent, and that the contract was made with reference to such a gas-tight retort. This the court refused, and instructed the jury that the word "retort" implies a gas-tight receptacle as a general proposition, but left it to the jury to determine whether it had that meaning in this contract. This presents the principal question in the case.

The "retort" used in chemical operations is defined as follows: ·

"In chemistry and the arts, a vessel of glass, earthen-

ware, metal, etc., employed for the purpose of distilling or effecting decomposition by the aid of heat.  Glass retorts are commonly used for distilling liquids, and consist of a flask-shaped vessel, to which a long neck is attached. The liquid to be distilled is placed in the flask, and heat is applied.   The name is also generally given to almost any apparatus in which solid substances, such as coal, wood, or bones, are submitted to destructive distillation, as retorts for producing coal gas, which vary much both in dimensions and in shape."   Century Dictionary.

See, also, definition in Webster's Dictionary.

The evidence on the part of the plaintiff is to the effect: That Dr. Thomas and Mr. Coon presented to Mr. Mac-Kinnon, plaintiff's agent, certain plans for these retorts and the other material; that Mr. MacKinnon asked them the purpose of their use; that they declined to state this purpose; that they represented to him that the retorts need not be gas tight; that there would be a slight pressure upon them not to exceed 10 pounds; that the rivets were by agreement placed three inches apart; that Mr. Coon was to instruct them in regard to the construction of the retorts, and when they were made they were to be inspected by Mr. Coon; that they were built exactly as directed by Mr. Coon; that when they were completed and Mr. Coon was notified, Dr. Thomas and Mr. Coon came to the plant of the plaintiff and inspected them; that on looking inside they could see daylight between the rivets; that they then informed Mr. MacKinnon that the retorts were not sufficiently tight; that Mr. MacKinnon then agreed to caulk them; that it was believed by them all that this would remedy the trouble; that they were caulked in the presence of Dr. Thomas and Mr. Coon and were accepted as satisfactory, and were afterwards shipped to defendant at Nolan.   Plaintiff also gave evidence tending to show that it was ignorant of the necessity of making these retorts gas tight, and relied upon the statement of Dr. Thomas and Mr. Coon that it was not necessary to make them so.   The defendant gave evidence to the effect that they placed their plans before Mr. MacKinnon and

left it to his judgment to make the proper machinery, that they did not agree that the rivets should be placed three inches apart, and did not inform him that it was unnecessary to have the retorts gas tight. In brief, the testimony of these witnesses on all material facts is in direct conflict.

Counsel for defendant cite many authorities from this and other courts holding that a written contract definite and unambiguous cannot be changed or extended by parol. The rule is well established and needs no citation of authorities. Does this contract come within that rule? Or does it come within the exceptions to it, where the written instrument does not express the entire agreement or understanding of the parties, or where a term is used susceptible of different meanings? The trouble lies only in determining whether the facts of a case bring it within the rule. Defendant's case in this regard is based upon the proposition that a retort necessarily means a gas-tight vessel, that it was so understood in this contract, and parol evidence to vary this common definition is inadmissible. It is quite probable that defendant was engaged in an experimental enterprise; that its agents, Dr. Thomas and Mr. Coon, did not fully understand the character of the material required. If it be a fact that they declined to inform Mr. MacKinnon the purpose for which these retorts would be used, it left him also in ignorance as to the necessity of gas-tight retorts and the character of the machinery required. Dr. Thomas testified that he told Mr. MacKinnon that Mr. Coon was their practical man and would give the MacKinnon Manufacturing Company the details of the construction. That this agreement did not include the entire contract is virtually admitted in the defendant's brief, for they specify several things in regard to the construction which are not found in the written agreement. To illustrate: They say in their brief "that the retorts would have a trough in the bottom tapering to the center, where there was to be an opening or spout eight inches in diameter." The con-

tract provided for a trough, but no specification as to its size or the size of the opening.   This and other things are stated in the brief as belonging to the contract, but they are not specified in it.   The plans submitted did not show the location of the rivets.   That they should have been nearer together to make a gas-tight retort is evident. The proposal by the plaintiff which was accepted by the defendant was made, according to plaintiff's testimony, in view of the location of these rivets and other specifications made to them during the prior negotiations.   The object of the testimony was not to contradict, but to explain, the contract.   To those not versed in mechanical terms and in chemical apparatus the word would convey a very indefinite meaning.   Without explanation, a jury would probably not fully comprehend its exact meaning.

"Where any doubt arises as to the true sense and meaning of the words themselves, or any difficulty as to their application under surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence dehors the instrument, for both reason and common sense agree that by no other means can the language of the instrument be made to speak the real mind of the party."   17 Cyc. p. 682.

In *Preston National Bank* v. *Purifier Co.*, 102 Mich. 462, it was held competent to introduce parol evidence to show in what sense the parties used the word "accounts." See, also, *John Hutchison Manfg. Co.* v. *Pinch*, 107 Mich. 12; *Liggett Spring & Axle Co.* v. *Michigan Buggy Co.*, 106 Mich. 445; 5 Current Law, p. 1319, § 5; *Windsor* v. *Railway Co.*, 37 Wash. 156 (Eng. Ann. Cas. 62).   The defendant's requests upon this point were properly refused.

2. Plaintiff claimed pay for certain extras.   The defendant gave evidence tending to show that the cost of these was not charged upon the plaintiff's books of account until the controversy arose over the contract, and that it demanded only the balance of the contract price. Error is assigned upon the refusal of the court to instruct

the jury that they should consider these facts in determining whether these alleged extras were or were not included in the contract. It is not good practice for the trial judge to select a portion of the testimony and give it prominence by instructing the jury that they should consider it. If the trial judge undertakes to refer to the evidence bearing upon a disputed point, he should carefully state it all on both sides. This request was faulty in calling attention to only one part of the evidence. It was not error to refuse it. The judge instructed the jury that, if they believed the testimony on the part of the defendant, these items were included in the contract, and plaintiff could not recover; but, if they believed the testimony on the part of the plaintiff, they were not included in the contract, and the plaintiff could recover for them. No error is assigned upon this instruction. It submitted to the jury all the evidence upon the question.

3. Errors are assigned upon the instruction of the trial judge as to the measure of damages which the defendant was entitled to recover provided the jury should find that the plaintiff had violated its contract in failing to construct the machinery in accordance therewith and the failure to deliver it within the time specified. The record is not in a condition to render it necessary to consider these alleged errors. It does not show what the judgment was. It does not even state that a judgment was rendered for plaintiff. It is impossible to determine, therefore, whether the plaintiff recovered the full amount of the contract price and the extras. There is nothing on the record to show that the jury found it necessary to consider the question of defendant's damages. If they found that the plaintiff complied with its contract, the question of damages was immaterial. *Brown* v. *Harris*, 139 Mich. 372, and authorities there cited. We said in that case, speaking through Justice Carpenter:

"The jury must have found either that the goods actually conformed to the contract, or that defendants accepted them as conforming to the contract. If no error of

law was committed in reaching that conclusion (a subject which will receive attention later in this opinion), defendants were not, as they insist, injured by the exclusion of testimony offered by them tending to prove the amount of their damages. Had the excluded testimony been admitted, it could not have affected the result, since it bore upon an issue which the jury did not consider. The error in excluding such testimony, if error it was, was not prejudicial "—citing authorities.

4. The negotiations leading to the making of the contract were had mainly with Hector D. MacKinnon on the part of the plaintiff, and Dr. Thomas and Mr. Coon on the part of the defendant. Arthur MacKinnon testified that he was present during a part of these negotiations, but not all. He was permitted to testify that Dr. Thomas and Mr. Coon did not make certain statements testified to by them. He testified that he was present when the details were discussed upon which the proposition was made. The admission of this testimony is alleged as error. It was competent for him to testify as to conversations he heard and what was, and what was not, stated in those interviews. A jury must be credited with common sense, and it is proper to assume that the testimony of the witness was ably presented to the jury on the part of the defendant. It cannot be assumed that the witness testified, or intended to testify, to conversations which he did not hear. There was no error in admitting the testimony.

The judgment is affirmed.

BLAIR, C. J., and MONTGOMERY, OSTRANDER, and BROOKE, JJ., concurred.