NELSON *v.* LESZCZYNSKI-CLARK CO.

1. DURESS—PAYMENT—RECOVERY BACK OF MONEY PAID UNDER THREAT OF PROSECUTION.

Where plaintiff claimed that he executed his promissory note to defendant to avoid threatened prosecution for an alleged shortage which defendant charged had arisen while plaintiff was in its employ, and, on the following day when the note matured, paid the amount promised, and there was no evidence that the pressure had been removed in the meantime, the evidence sufficiently showed duress and its continuance to the time of payment.

2. SAME—BILLS AND NOTES—COMPROMISE AND SETTLEMENT.

The discontinuance of an attachment suit that defendant had instituted against plaintiff, but which he knew nothing about at the time he gave the note and of which he only incidentally learned on the day he paid it, was not such consideration as to support the payment or the claimed settlement.

3. SAME—TRIAL—CHARGE.

The court did not commit error in charging the jury that plaintiff could recover only if he proved that he was induced by duress to pay a debt he did not owe, or was misled by fraudulent representations that the amount of indebtedness arising out of the shortage was greater

than it really was, and plaintiff paid the amount in reliance on such statements, in which case he could recover the difference between what he paid and what he, in fact, owed.

Error to Huron; Beach, J. Submitted June 17, 1913. (Docket No. 9.) Decided November 3, 1913.

Case by Edward B. Nelson against the Leszczynski-Clark Company, John G. Clark and John Ryan for the recovery of money paid under duress. Judgment for plaintiff. Defendants bring error. Affirmed.

*George M. Clark (Wilbur J. Beach,* of counsel), for appellants.

*Hall, De Foe & Hall,* for appellee.

KUHN, J. The defendant corporation is organized under the laws of this State, and is engaged in the general mercantile business in the village of Palms, Sanilac county. The defendants John G. Clark and John Ryan were stockholders in the corporation, which was capitalized at $3,000. The plaintiff, a young married man of the age of 24, was employed by the defendant company on December 3, 1909, as the manager of its store, and remained in charge until November 28, 1910. Previous to this employment he had spent nearly all his life on a farm, with the exception of one year when he had worked as a rural mail carrier. He had also worked for about six months in a grocery store in a country village, and for three months prior to his employment by the defendant company had been engaged in putting up orders in the wholesale house of Clark & McCaren Company, at Bad Axe. The business management had been taken over in May, 1909, by a Mr. Potts, who, because of ill health, was obliged to leave the business in August, and from that time up to the

time of plaintiff's employment Mrs. Potts, assisted by a young man named Welsh, had charge.

An inventory of the business was taken at the time Potts assumed control; but no inventory was again taken until after the plaintiff had become dissatisfied with his position, and had made arrangements to go West with relatives. When this inventory was compared with the one made in May, 1909, it was found that a loss of $1,728.17 had been sustained in the interim. The plaintiff was sent for, and on December 6, 1910, went to Palms, where he met Mr. Clark and Mr. Leszczynski at the store. The inventories were compared, and after telephoning to defendant Ryan, who is the cashier of a bank at Bad Axe, it was arranged to go to that place the same evening.

There is considerable dispute as to what occurred at Palms and at Bad Axe. It is not claimed that threats were made at Palms; but it is the claim of the plaintiff that in a private office of the bank at Bad Axe he was told that there was a shortage in his accounts of $3,000, and that, unless he made a settlement of some kind, they would immediately have him "arrested and brought up on a charge of embezzlement, grand larceny, and criminal carelessness;" that, although he denied any knowledge of a shortage, the threats were repeated, and he was told that he had better settle the matter and keep it quiet, because it would bring disgrace to his wife and family and his own people; that he was told that, although the shortage was $3,000, because of sympathy for his wife and baby, they would accept $2,000. Thereupon he signed a promissory note for that amount, dated December 6th and payable one day after date. He also signed and acknowledged before a notary public at the same time another paper, which read as follows:

"BAD AXE, MICH., December 6, '10.
"I have this day given to Leszczynski-Clark Company my note for two thousand dollars, payable one day after date. If said note is paid when due said company is to release me from all debts and obligations which I admit that I owe them; should I fail in paying said note, said company have the right to commence criminal and civil action against me."

The wife of the plaintiff was sworn as a witness, and testified that when he arrived home that evening he was crying, stating that everything had been taken from him. Other witnesses testified as to his mental condition for some time after the settlement. On the day after the settlement he went to the office of Mr. Clark, and demanded the return of his note, which was refused. He thereupon, accompanied by a brother-in-law, went to the law office of Mr. Boomhower in Bad Axe, who at the time was the prosecuting attorney of Huron county, where he was also joined by his two brothers. He claims to have explained the situation to Mr. Boomhower; that he owed the defendants nothing; of the giving of the note and the threats; that Mr. Boomhower, after consulting the statute, told him that, if a charge were preferred against him, and he were found guilty, he could be sentenced to prison for not to exceed five years; that it would probably cost him $2,000 to fight the case, even if he won; that while in Mr. Boomhower's office he also learned that the defendants had that morning commenced a suit against him by placing an attachment on his farm; that thereupon he went to the bank with his brothers, and arranged to turn a farm which he owned over to them as security, and they took up his note by giving their own note for a like sum, which they paid the following day.

The defendants strongly denied making any threats, and testified that the plaintiff admitted the shortages, and at the interview had with him he stated that the

inventories did not contain all the company then owed. Suit was brought, which resulted in a verdict for the plaintiff for $2,000 and interest.

The questions involved in this appeal are grouped in appellants' brief as follows:

"*First.* That a verdict for the defendants should have been directed by the trial court.

"*Second.* That the trial court was in error in instructing the jury that they might find for defendants only in case the shortage approximated $2,000.

"*Third.* That the trial court erred in refusing to instruct the jury in regard to a voluntary payment with full knowledge of the facts, and in the instructions as to money had and received.

"*Fourth.* That statements of plaintiff's counsel were improper and prejudicial."

In discussing the first proposition, it is urged that the burden was upon the plaintiff to establish duress, and that a verdict should have been directed for the defendants, because plaintiff's proofs show that the matter was fully and fairly settled upon the advice of his own attorney and his relatives. Whether or not such threats were made became a question of fact for the jury to determine, and the trial judge, under careful instructions, submitted the question to them. It is urged that the plaintiff's proofs showed that the threats were made at the time of the execution of the note, and that no threats were made on the following day which induced its payment. Accepting plaintiff's testimony as true, that the threats were made, it appears that the threats were to prosecute unless the claimed shortages were paid. Having no money with him, he gave a note payable the following day. It was not necessary that the threats be again repeated if there was testimony to show that the undue pressure was not removed in the meantime. *Briggs* v. *Withey,* 24 Mich. 136; *Cribbs* v. *Sowle,* 87 Mich. 340 (49 N. W. 587, 24 Am. St. Rep. 166); *Bentley* v. *Robson,* 117 Mich. 691 (76 N. W. 146); *Knight* v.

*Brown,* 137 Mich. 396 (100 N. W. 602) ; 22 Am. &
Eng. Enc. Law (2d Ed.), p. 614.

The court charged the jury that they must not only
find that the .giving of the note was induced by
threats of criminal prosecution, but its payment also.
It cannot be said as a matter of law, under the facts
in this case, that the jury were not warranted in find-
ing that the undue pressure had not been removed.
From the time of the giving of the note to the time
of its payment plaintiff talked only with his wife, his
brother-in-law, and his two brothers, who were farm-
ers with no particular experience in business matters.
He demanded the return of the note, which was re-
fused. His conference with Mr. Boomhower cer-
tainly did not tend to allay his fears. When he was
informed that, if defendants pressed the charge, a
prison sentence was staring him in the face, he im-
mediately paid his note. It is true that there must
be continued existence of duress; but this question
was properly submitted to the jury.

It is urged that the settlement of the attachment
suit would be a good consideration for the payment
of the plaintiff's note given the preceding evening.
The record shows that the attachment suit was not
discussed or mentioned between the parties as to its
commencement or discontinuance, and the plaintiff
heard of it only by accident while, at Mr. Boomhow-
er's office. It did not enter into the consideration of
either of the notes.

Errors are assigned upon the instruction of the
court in case the jury should find that Nelson was
responsible for a shortage which did not approximate
$2,000, providing the defendants made the claim in
good faith. However, we do not consider it neces-
sary to consider these alleged errors, because it is
clear that the jury did not come to that phase of the
case. It was the claim of the plaintiff that there was
no indebtedness. Defendants claimed approximately

$2,000 of indebtedness. The jury having rendered a verdict for the plaintiff for the full amount, they must have determined that there was no shortage, and could not have found it necessary to consider instructions by which they were to be governed in case they found a shortage less than the amount of the settlement. *MacKinnon Boiler, etc., Co.* v. *Land Co.,* 156 Mich. 11 (120 N. W. 26).

Under the charge of the court the plaintiff could only recover in case he proved, either that he was induced by duress to pay a debt he did not owe, or—

"If in the attempt to settle, defendants wrongfully and intentionally misrepresented the amount of the indebtedness, and plaintiff relied upon such statements of the defendants, and overpaid his indebtedness, he would be entitled to recover back the difference between his payments and the actual amount of his indebtedness."

The charge fairly presented the issues which were determined by the jury, and no error was committed in the failure to give defendants' request to charge as to voluntary payment.

We have examined the assignments of error as to the statements of counsel. When the statements complained of were called to the attention of the trial judge, he immediately, in the presence of the jury, corrected counsel. We find no prejudicial error in relation thereto.

The judgment is affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.