THE GODFREY CONVEYOR CO. *v.* PORT HURON STORAGE &
BEAN CO.

1. SALES—GUARANTY—BREACH—EVIDENCE—ADMISSIBILITY.

In an action for the purchase price of certain conveyor
machinery, where the defense was breach of guaranty in
that the conveyor failed to work and the hoist furnished
was not the one ordered, the admission of testimony as
to representations made by plaintiff's agent prior to the
making of the contract, that the hoist was too light and
was defective, and that other outfits made by plaintiff did
not work satisfactorily, *held*, not reversible error.

2. SAME—APPEAL AND ERROR.

The exclusion of testimony by plaintiff's witness that the
Universal hoist was a standard hoist, *held*, not reversible
error in view of the fact that witness was allowed to testi-
fy that, "The standard hoist in this contract means the
hoist that we were furnishing with our one-ton job at that
time," followed by testimony that, "There was only one
hoist standard with our equipment at that time and that
was the Universal hoist which was shipped to the de-
fendant."

3. SAME—TRIAL—REFUSAL OF REQUESTS TO CHARGE.

Where the evidence was contradictory, the court was not
in error in refusing plaintiff's requests to charge which
amounted to the direction of a verdict in its favor.

4. SAME—INSTRUCTIONS—ISSUE.

In view of the fact that the jury was told that if plain-
tiff delivered to defendant what it sold, defendant should
pay therefor, it cannot be said that there was reversible
error in the charge as to the issue involved.

Error to St. Clair; Tappan (Harvey), J.   Sub-
mitted April 24, 1923.   (Docket No. 11.)   Decided
October 1, 1923.   Rehearing denied December 20, 1923.

Assumpsit by The Godfrey Conveyor Company

against the Port Huron Storage & Bean Company for the purchase price of certain machinery.    Judgment for defendant.    Plaintiff brings error.    Affirmed.

*Phillips & Jenks* (*V. G. Cawley,* of counsel), for appellant.

*J. B. McIlwain* and *Shirley Stewart,* for appellee.

MOORE, J. · Among other activities the defendant is a retail dealer in coal at Port Huron.    In response to its inquiry it received a letter reading as follows:

"Elkhart, Indiana, August 6, 1919.
"PORT HURON STORAGE & BEAN CO.,
"Port Huron, Michigan.
"Attention Mr. BARRETT, secretary.
"*Gentlemen:* Your favor of the 4th inst. addressed to Mr. Riblet, our sales engineer for Michigan, has just come to our office and in the absence of Mr. Riblet we will answer same.

"Godfrey Conveyors are proving to be a highly economical and efficient method for handling coal and similar materials mechanically—in fact, the most economical, we believe, on the market.

"You will note that it is operated by one man at the hoist and hardly a day passes but that we receive letters from owners of our equipment to the effect that they have been able to reduce their labor costs of unloading and conveying their coal to bins or point of consumption to a very few cents, in some cases even less than four  or five cents per ton.

"The average installation of our equipment costs only around $2,200 to $2,400 and the investment is hardly a matter for serious consideration when you take  into  account  your saving through using this system.

"Assuring you that our Mr. Riblet will be very glad to go over your ground in person and show you just how our equipment can be adapted to solve your coal handling problem, we remain,

"Very truly yours,
"THE GODFREY CONVEYOR CO.,
"Per I. D. LANDIS,
Sales Manager."

Mr. Riblet visited Port Huron and his visit resulted in the execution of a paper, the material parts of which read:

"Proposal From The Godfrey Conveyor Company. Conveying Machinery.

"Patented and Patents Pending.

"Elkhart, Indiana, U. S. A.

"Date, August 22, 1919.

"To PORT HURON STORAGE & BEAN COMPANY (hereinafter called the Purchaser).

"Via Ft., Port Huron, Michigan.

"For and in consideration of the sum to be paid by the purchaser as hereinafter stated, I will furnish and purchaser agrees to accept the following material f. o. b. cars, factory, in good shipping order in approximately 30 working days from date of acceptance and approval of this proposal, subject to the conditions herein set forth.

"One hundred sixty-eight lineal ft. I-beam, conveyor track including hoisting and traction cable and fittings. More to be added or less credited at $2.50 per lineal foot. Cableway track price based on entire length of track rope.

"One steel trolley car complete.

"One Standard Hoist complete on steel base.

"One conveying bucket.

"One steel track chute.

"One Standard make of motor, current A. C.   If A. C. volts 220, phase 3, cycles 60, 7½ H. P.

"All necessary pulley blocks.

"All steel bucket guides.

"All complete general and detail blue prints.

"If necessary erection engineer will be furnished one day to show how to operate.   *   *   *

"The purchase price for the above material is to be twenty-two hundred and ninety-five dollars, payable as follows:   *   *   *

"The foregoing proposal is subject to the approval at the home office in Elkhart, Indiana.

"Respectfully yours,

"THE GODFREY CONVEYOR COMPANY,

"Per W. R. RIBLET,

Salesman.

"Accepted: PORT HURON STORAGE & BEAN COMPANY,
Purchaser.

"By CLAIR H. BARRETT, Secretary.

"Date 8-22-19.

"Approved at Elkhart, Indiana, August 26th, 1919.
                              "THE GODFREY CONVEYOR CO.,
                                   "Per I. D. LANDIS,
                                   Sales Manager.    *    *    *

"Guarantee—We The Godfrey Conveyor Company
guarantee the mechanical operation of Godfrey Conveyors; also against defects of workmanship and
material.

"Improvements—The Godfrey Conveyor Company
reserves the right to make changes or improvements in
the construction or equipment of their product at any
time without obligating themselves to install the change
or changes on any conveyor previously sold.    *    *    *

"Conditions: This order constitutes an agreement
between the purchaser and The Godfrey Conveyor
Company as it exists at this date, wherein the purchaser agrees to accept and pay for the equipment
covered by this order, and it is understood and agreed
that all previous communications between said parties,
either verbal or written, not herein contained, are
hereby withdrawn and annulled, and that no modification of this agreement shall be binding upon the
parties hereto or either of them, unless such modification shall be in writing, duly accepted by the purchaser, and approved by The Godfrey Conveyor Company. at Elkhart, Indiana.    *    *    *

"Adjustments: Goods shipped under this order and
found to be defective in workmanship and material are
to be duplicated without charge when such goods are
returned to us with the transportation charges prepaid and examination at our works proves the claim,
but no other claim for damage or for labor will be
made or allowed.    Claims on account of shortage or
errors or defective materials will not be considered
unless made immediately upon receipt of goods."

Most of the material was shipped but it was the
claim of defendant that some of the blueprints were
delayed and for this and other reasons the plant was
not completely installed until the cold weather came

on.   Before the machinery was installed a fire oc-
curred at defendant's plant.   Some of the paint on
some of the parts was blistered.   Some of the bab-
bitt metal in some of the boxes was melted and other
injury done, but it is claimed by defendant that all
of these parts were put in good order before they were
installed.

This suit was begun August 16, 1920, and before
the plant was completed.   It was, however, completed
before the case was tried the second time.

At the conclusion of the testimony the following ap-
pears in the record:

"The claim of plaintiff, including interest at five per
cent. from January 1, 1920, to March 1, 1922, amount-
ing to $248, making the whole claim of plaintiff,
$2,547.10.

"The claim of defendant is $3,724, and two years'
interest, $372.40, making a total of $4,096.40.

"Thereupon the jury retired and rendered a verdict
for the defendant and against the plaintiff in the sum
of $4,096.40.

"Judgment entered upon the verdict."

The case is brought here by writ of error, counsel
claiming, we quote from the brief:

"The assignments of error are numerous but can
readily be divided into classes:
"(1) Admission of improper testimony.
"(2) Rejection of proper testimony.
"(3) Refusal to charge the jury as requested.
"(4) Errors in charge to jury."

1. The defendant was permitted to introduce testi-
mony of statements made by Mr. Riblet, agent for
plaintiff making the sale, prior to the contract, which
statements the agent denied having made.   Defend-
ant also introduced testimony tending to show that the
hoist was too light and was defective in several
parts.   Defendant was also permitted to introduce
evidence as to other outfits made by plaintiff used in

other cities which did not work satisfactorily. It was contended that under the contract in this case evidence was not admissible to show that any part was defective unless it was first shown that the part had been returned to the plaintiff, and as it appeared by the concession of defendant that no part had been returned this evidence should not have been allowed; counsel citing many authorities.

It was the contention of the defendant that plaintiff did not send to it the machinery it bought; that the hoist sent was too light, that the clutch and the bucket were defective, and that the guaranty of the plaintiff of the mechanical operation of Godfrey conveyors was not fulfilled, and that what was furnished was wholly worthless for the purpose for which it was bought. It was the claim of the defendant that the provision in relation to the adjustments did not relate to the situation here, that it would be an idle ceremony to ship back the hoist, clutch, and bucket and have duplicates of them returned when the duplicates would be expected to do just what the originals had done. It will be noticed the order reads: "One Standard Hoist complete on steel base," not naming the make or name of the hoist. Was it not competent to show orally that the hoist furnished was not the hoist ordered? Witnesses for the plaintiff say it was a standard hoist and would do the work which it was expected it would do. Witnesses for the defendant were equally positive it was not a standard hoist. We quote some of the testimony of one of the witnesses:

"I am in the wholesale business in Minneapolis and have been about 25 years and know The Godfrey Conveyor Company.

"Q. State whether or not you bought a hoist from the plaintiff?

"A. Yes, sir, it is the same as defendant's Exhibit 1. I purchased it on August 8, 1919. I recall the date when the plaintiff notified me the conveyor was

ready for operation.    It was in August, 1920.  After that the conveyor started under the representation that it was ready for operation.  *  *  *

"*Q.* Let me ask you, was the erection of that conveyor done entirely as directed by the engineer of the company?  *  *  *

"*A.* Absolutely.    We commenced to use the conveyor and the hoist broke.    The machinery was too weak to stand and carry the load.    It wouldn't work fifteen minutes when it was guaranteed to run twenty-four hours a day.

"*Q.* And can you state in plain language the reason for that breakage?

"*A.* Well, the reason is that the machinery itself was not substantially constructed and not substantial enough to do the work it was intended to do.

"*Q.* Then, as I understand you, when you say the hoist broke you don't mean the mere rope or cable?

"*A.* No, sir, I mean the hoist itself gave way.    That is the heart of the proposition, the hoist itself.    The conveyor like defendant's Exhibit 1 was absolutely useless for hoisting.    About the last of November, 1921, Mr. Godfrey came up and went over it and found many defects.    He told me the hoist was not strong enough to do the work and they had entirely discarded it.

"*Q.* State whether or not the hoist which your company purchased is of any value whatsoever for the unloading of coal for the purpose for which it was designed.  *  *  *

"*A.* We considered it dangerous to use it at all, even though it might be repaired.    Something might snap at any moment.    It is absolutely valueless."

There was much other testimony of like tenor.    We think it was competent as bearing upon the question of mechanical operation, as well as whether a standard hoist was furnished.    See 17 Cyc. p. 682; *MacKinnon Boiler and Machine Co.* v. *Land Co.*, 156 Mich. 11; *Sturges* v. *Railway Co.*, 166 Mich. at p. 238, and the many cases cited therein.

2. Did the court err in rejecting testimony.    Counsel states its claim as follows:

"Although defendant's witness Murphy was permitted to testify that the hoist furnished (the Universal hoist) was not a standard hoist, plaintiff's witness Brown was not permitted to testify that the Universal hoist was a standard hoist and witness Grossman was not permitted to testify as to the meaning of the words 'one standard hoist.' Witness Spencer who operated a Godfrey conveyor system was not permitted to testify as to the size of the friction clutch on the hoisting drum in his hoist, and witness Brown was not permitted to testify that the friction clutch on the Spencer hoist was the same size as that upon the hoist furnished defendant, and that this size was ample."

We quote from the record:

"*A.* The standard hoist in this contract means the hoist that we were furnishing with our one-ton job at that time. There is no such thing as a hoist that is a standard for all hoists. There is a variation with the load they have to carry.

"*Q.* What do you say as to this hoist, the Universal hoist which was furnished here, coming within the meaning of that word in that contract, a standard hoist?

"*The Court:* He may describe what he understands a standard hoist to be and the jury will determine whether it comes within the contract or not.

"*Mr. Cawley:* Mr. Murphy testified this was not a standard hoist.

"*The Court:* Why didn't you object?

"*Mr. Jenks:* We did.

"*The Court:* It is for the jury to determine whether it comes within the contract or not. He may describe what he understands that to be fully.

"Exception.

"*Q.* Will you describe then more fully what a standard hoist. within the meaning of this contract, was?

"Objected to for the same reason.

"Objection sustained.

"Exception.

"There was only one hoist standard with our equipment at that time and that was the Universal hoist which was shipped to defendant."

It will be noticed that the witness stated: "The standard hoist in this contract means the hoist that we were furnishing with our one-ton job at that time." Again: "There was only one hoist standard with our equipment at that time and that was the Universal hoist which was shipped to the defendant." The witnesses were allowed to testify and did testify that if properly managed the machinery would do the work which it was expected to do. While it would perhaps have been better to have allowed answers to more of the questions, we do not think the restrictions were such as to be reversible error. Testimony could not well be more contradictory than in the instant case. The plaintiff claimed defendant got what it bought. Defendant denied this and insisted it got a worthless outfit. These contentions presented questions of fact for the jury.

3. Did the court err in refusing plaintiff's requests to charge? The practical effect of each of these requests, if given, would have been to direct the jury to find a verdict for the plaintiff. We think the court did not err in this respect.

4. Did the court err in his charge as given? Special complaint is made of the following language in the charge:

"Defendant also claims that plaintiff company did not ship the hoist it sold it. That he contracted for a larger hoist that the plaintiff was to make in its own factory, and that the plaintiff shipped him a lighter hoist instead, that was too light to do the work required. * * *

"But in the warranty clause the plaintiff guarantees the mechanical operation of Godfrey conveyors and from the nature of the materials and the guarantee of the operation of the conveyor, it is the conclusion of the court that the plaintiff agreed to furnish the necessary materials which, if properly erected and installed and operated by the defendant should produce a com-

plete conveyor that would successfully convey a ton of coal at a load as it was designed."

It is insisted there was no testimony to base either statement upon. As to the first of these statements Mr. Barrett testified that the salesman made such an agreement, and there is other testimony tending to corroborate this claim. As to the second statement, witness Grossman, a salesman of the plaintiff, testified in part:

"In August, 1919, The Godfrey Conveyor Company was selling but one type or size of hoist on its ton jobs. That hoist was not too light to handle a ton load. I have seen Universal hoists on Godfrey installations operating very satisfactorily. They were lifting a so-called ton bucket full of coal."

Other testimony we have quoted indicates the outfit was expected to carry a ton of coal at a time. When the judge made the statements above quoted there was no suggestion he had improperly stated the facts. The charge of the court endeavored to cover every phase of the case. The jury was told in the plainest of language that if the plaintiff delivered to the defendant what it sold to him he should pay for it. We do not discover any reversible error. See *Lanphere* v. *Ackles*, 220 Mich. 300.

The judgment is affirmed, with costs to the appellee.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.