MANN v. URQUHART.

Opinion delivered February 8, 1909.

1. CONTRACT—DUTY OF COURT TO CONSTRUE.—Where the terms of a contract are evidenced by several written instruments, such as letters and telegrams, it is the duty of the court to construe the contract and declare its terms to the jury. (Page 247.)

2. SAME—CONSTRUCTION.—Where defendant declined to buy an interest in a patent right upon the ground that he had no money, and the vendor proposed by telegram "to carry" his interest if he would buy, which proposition was accepted, the meaning of the proposition was that the vendor would advance the money to pay for his interest. (Page 247.)

3. SAME—CONSTRUCTION OF SEVERAL INSTRUMENTS TOGETHER.—Where several instruments, witnessing a contract, were executed at different times, but were intended by the parties to be considered together, they will be so treated. (Page 248.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* judge; affirmed.

STATEMENT BY THE COURT.

Appellee, executrix of estate of E. Urquhart, deceased, sued appellant on the following promissory note:

"$6250.00                    Little Rock, October, 31, 1903.

"Nine months after date I promise to pay to the order of E. Urquhart sixty-two hundred and fifty dollars at the Citizens' Investment & Security Company's office at Little Rock, Ark., value received, with interest. Due July 31, 1904.

"George R. Mann."

The complaint recites that the interest was paid on the note February, 1905, and the note extended to July 31, 1905

Appellant's defenses to the action were:

First. The note was for an interest in a patent right, and therefore was void.

Second. The note was given as a matter of form, and was not intended by either party thereto to be paid.

Appellee introduced the note sued on, identified it and rested. Appellant, to sustain the defenses set up in his answer, testified substantially as follows; That the payee in the note was dead, that he executed the note in suit. The transactions about the note were with Mr. Miller, who had an interest in a factory

for making said sand lime brick, located in Little Rock, Arkansas, and who represented Urquhart. Miller had negotiated for the purchase of the patent for making brick by the sand lime process in the State of Missouri. Appellant as an architect was interested in this process, and Miller desired that appellant purchase an interest in the patent, as he was acquainted in Missouri, where Miller desired to exploit the patent right. Miller in 1903 was in New York, and urged appellant by letter to buy a fourth interest in the patent right. Appellant declined, saying he had no money to go into it. Miller telegraphed him from New York that it would take no money, that they (meaning Urquhart) "would carry everything."

Appellant wired Miller that on those conditions he would take an interest. Miller on October 31, 1903, wrote appellant in answer to the latter's telegram as follows:

"I beg to acknowledge receipt of your telegram of Oct. 27th inst, reading as follows: 'Will go in as per your last night wire,' to which I replied by wire this A. M. as follows, 'Have closed for Missouri agreeable to your last telegram. Have written.' And hope for an early meeting in Little Rock to discuss details with Mr. Urquhart. I may be detained here a few days longer, but will advise you when I leave for Little Rock. In the meantime talk up bricks and consider line for future action."

Appellant heard nothing further from Miller or Urquhart until sometime afterward in Little Rock, when Miller asked that he sign the note in suit. He was surprised at the request, and Miller stated that he should have some evidence of that fourth interest. Miller at that time had made arrangements to sell the patent right for Kansas City, Missouri, and St. Joe, Missouri, and he figured that these sales would bring in enough to repay Urquhart what he had paid for the patent right, and Mann's note was made to extend over this time, so that in the meantime Urquhart would have realized what he would have paid for the patent right from the sale of the Kansas City and St. Joe territory.

The understanding between Mann and Miller was that the note should be executed, so that when the patent right in Missouri was sold Mann could not claim a part of the principal

of the sale, but only a part of the profits. Miller simply stated
that Mr. Urquhart should have some evidence of the principal,
Mann's interest in the matter, so, if the patent was sold, Mann
would not come in for a part of the principal it was sold for.

At the time the note was executed, an assignment was made
of one-fourth interest in the patent to Mann, as follows:

"Know all men by these presents: That I, the undersigned,
Edmond Urquhart of Little Rock, Arkansas, being the owner
of the patented process known as the 'System Huennekes,' the
rights of which process have been assigned to me under a cer-
tain agreement with the H. Huennekes Company dated Octo-
ber thirty-first (31st), A. D. 1903, for the State of Missouri,
hereby transfer, sell and assign to George R. Mann, a resident
of St. Joe, Missouri, a one-quarter ($\frac{1}{4}$) interest in said patent
rights for the 'System Huennekes' and all other rights given
me under the aforesaid agreement for Missouri.

"In witness whereof I have hereunto set my hand and seal
this thirty-first (31st) day of October, A. D. 1903.

     (Signed)   "E. Urquhart. (Seal)
"Witness:

 "W. H. Miller."

Nothing was said about the note afterwards between the
parties until Mann got notice from the bank that it was due.
He then saw Miller, and Miller said that he had better renew it,
as the Missouri right "will be sold in a short time." When
the question of interest on the note came up, Miller stated that
it was no more than right that Mann should pay the interest
on the note, and Mann paid the interest twice, but refused to
pay it afterwards.

The fact that appellant was an architect was the entire con-
sideration for getting him interested in the patent. He en-
odeavored to assist all he could in selling the patent right in
Missouri, making several trips on this account.

The assignment of the interest in the patent from Urquhart
to Mann was dated October 31, 1903. The acknowledgment
is dated in December, 1903. He does not know why this was
done. He was asked if it was not because Urquhart had pur-
chased the patent from Huennekes and advanced the money to
pay for his interest in the patent, and that the interest was dated

back so as to make it coincide with the date of the transaction. Witness did not remember anything about this. The note was executed at the same time the asignment was delivered to witness, and it was dated back to October 31st. Witness was asked if this was not because Colonel Urquhart had advanced the money to purchase the interest for him. That he did not remember. The note was first extended for six months at Mann's request, and extended another period of six months also at his request.

Appellee, in rebuttal and to sustain her contention that the note in suit was for money advanced by the payee to Mann to enable him to purchase an interest in the patent, introduced witness Miller, whose oral testimony tended to support her contention. He testified that he wrote appellant from New York as follows:

"New York, Oct. 16th, 1903.
"Mr. Geo. R. Mann, Architect,
    "Little Rock, Ark.
"Dear Sir:

"I have talked over with Mr. Urquhart the Mo. proposition for the Huennekes sand lime brick rights. He is willing to buy State of Missouri rights out and out for cash, provided I advise it and will take a ¼ interest. It is now up to me. I have decided that if you approve the purchase and will take a ¼ interest and a like amount, and will jointly with me work up the sale of the Mo. territory or form company as you and I may elect, I will advise him (Mr. Urquhart) to make the purchase. In the event you haven't the ready money to spare, I can no doubt arrange with Mr. Urquhart to carry part of your interest. Wire me on receipt of this care Marie Antionette Hotel, New York, your decision. In case you decide to take interest, state how much you would want Mr. Urquhart to carry.

"The H. Co. have named me $25,000 cash as the lowest price for Mo., and are quite indifferent as to whether we buy or not. I do not care to go into this enterprise, and will not advise Mr. Urquhart to put his money in same, unless you join me and give it your professional countenance and aid in disposing of territory as we may deem best.

"I will be here until the 25th, possibly the 1st. If we decide to purchase Mo., we will have to act at once."

The H. Co. referred to in the letter was the Huennekes Company. He received the following telegram from Mann in reply to the letter:

"St. Joe. Mo. 26.

"To W. H. Miller,

"Hotel Marie Antionette.

"Believe Missouri can be sold by counties for large profit, but on account of Little Rock investment can not now go in.

"Geo. R. Mann."

. And Miller sent the following telegram in answer thereto:

"Oct. 26, 1903.

"Geo. R. Mann, Architect.

"St. Joseph, Mo.

"If you will go in, will arrange to carry your entire interest. Wire decision.

"W. H. Miller."

And received the following telegram in answer to his:

"St. Joe, Mo. 27.

"W. H. Miller,

"Hotel Marie Antionette.

"I will go in as per your last night wire.

"Geo. R. Mann."

And telegraphed Mann afterwards as follows:

"October 31st, 1903.

"Geo. R. Mann, Architect,

"St. Joseph, Mo.

"Have closed for Missouri agreeable your last telegram. Have written..

"W. H. Miller."

Miller, over the objection of appellant, was permitted to testify: that the agreement was that he was to take a fourth interest in the patent right for State of Missouri, Mann was to take a fourth interest, and Urquhart was to put up the money to carry Mann's part; that the purchase from Huennekes was by Colonel Urquhart on behalf of himself and Mann as to a fourth interest each.

Witness Miller further testified that he asked Mann to execute his note for the one-fourth interest in the patent right, and asked him to fix the date of the maturity, and at his suggestion fixed the maturity at nine months. The note was then turned over to Urquhart, and Urquhart conveyed a one-fourth interest in the patent to Mann. The note was delivered to Miller, and the assignment delivered to Mann at the same time on the 7th of December. Both were dated back because Miller and Mann dated the purchase from October 31st, the date of the purchase by Colonel Urquhart from the Huennekes Company, and Mann's note was to bear interest from this date. There was no understanding that Mann should not pay the note, or that it was executed as a matter of form. It was carrying out the agreement in the letters and telegrams in regard to the purchase of the Missouri rights. It was to carry his one-fourth interest, which was to be carried for him by Colonel Urquhart. This interest was not re-assigned by Mann to Urquhart.

The bill of sale for the patent right from the owners to Urquhart was by agreement introduced in evidence. It recites that the party of the second part (Urquhart) "is desirous of securing and obtaining for himself such exclusive right to the said process and all the rights of the parties of the first part (the owners) under the said patent." The consideration named as paid was twenty-five thousand dollars, and the assignment of the patent right is solely to Urquhart. Miller further testified that the delivery of the note to Miller and the delivery of the assignment of one-fourth interest by Urquhart to Mann were one transaction. This was December 7, but they were dated October 31, to cover the date when the interest in the patent right was purchased from Huennekes.

There was testimony tending to show that the patent right was worthless.

At the request of appellee the court instructed the jury as follows:

"1. If the jury find that the plaintiff's testator (E. Urquhart), the defendant, and W. H. Miller entered into an agreement to buy the rights to the State of Missouri in a patented invention known as the 'Huennekes System' for manufacturing

sand lime brick, by which the said Urquhart was to advance the defendant's part of the purchase money; that he did advance the money to pay for said patent, taking an assignment thereof in his own name, and afterward executed assignment to the defendant for a fourth interest in said patent right as of the same date as the assignment to him, and the note sued on was executed for such advance, they will find for the plaintiff.

"2. You are instructed that the letters and telegrams that passed between W. H. Miller, acting as the agent of E. Urquhart, and the defendant, while the said Miller was in New York in October, 1903, evidenced an agreement that the defendant would join the said Miller and Urquhart in the purchase of the patent right of making sand and lime brick in the State of Missouri jointly, and that the said Urquhart would advance the money to pay for the interest of the defendant, the same being a one-fourth interest in said patent right for the State of Missouri. And if you find that the note sued on was executed for the money advanced by said Urquhart to pay for the defendant's part in said patent right, you are instructed that the statute requiring a note given to a vendor for a patented machine or patent right shall be executed on a printed form and show on its face that it was executed in consideration of the patented machine or patent right does not apply to said note.

"3. If the jury find that said note was executed for money advanced by E. Urquhart to pay for a one-fourth interest in a patent right in the State of Missouri to manufacture sand lime brick purchased for the said Urquhart, the defendant and one W. H. Miller, they will find for the plaintiff, although they may believe that the patent was of no value."

The court gave the following instructions at the request of appellant:

"2. If you find from the evidence that W. H. Miller was negotiating with defendant on behalf of E. Urquhart in regard to a transfer to defendant of an interest in a patent right, and that the said Miller agreed with defendant that he should execute the note that is the basis of this suit, but with the understanding and agreement that he should never be held to pay said note, you are instructed that the agreement to this effect on the part of Miller, representing Urquhart, would be binding upon

Urquhart, and your verdict will be for the defendant.

"12. The burden of proof is on the defendant to establish that the note in suit was not to be paid by a preponderance of the evidence."

The court refused appellant's request for peremptory instruction in his favor. The court also refused the request of appellant for an instruction telling the jury that the note in suit having been given for a patent process, not showing on its face that it was so executed, is void, and to find for appellant. The court also refused to submit to the jury at the request of defendant the question as to whether the note in suit was executed for an interest in a patent right. Among other requests of appellant refused by the court were these:

"9. You are instructed that you are the sole judges of what was meant by the parties by the expression used by W. H. Miller to defendant that he would carry his entire interest; and if you find from the evidence that by this expression the parties meant that defendant should not be expected to pay for the interest in the patent, and was not to have an interest in the patent, but was to have only an interest in the profits realized by sale of the patent, and that the note in suit was executed merely as a matter of form, your verdict will be for the defendant.

"10. You are instructed that all previous negotiations between the parties culminated in the execution and delivery of the assignment of the patent right to defendant and his execution and delivery of the note in suit to W. H. Miller, as agent, for E. Urquhart, and, the transaction therefore being for a sale of an interest in a patent, your verdict will be for the defendant.

"11. If you find from the evidence that the note in suit was given in consideration of an interest in the patent right called 'System Huennekes,' sold by E. Urquhart to the defendant, your verdict will be for the defendant."

Proper exceptions were saved to the rulings of the court in granting appellee's request for instructions, and in refusing appellant's prayers. The verdict was in favor of appellee for the face amount of the note and interest. Judgment was entered accordingly. A motion for new trial assigning as error

the various rulings of the court, to which exceptions were saved, was filed and overruled.

This appeal was taken.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

The clear terms of the contract could not be varied by the prior negotiations. 51 Ark. 441; 21 *Id.* 440; 23 *Id.* 121; 13 *Id.* 593; 41 *Id.* 393; 64 *Id.* 650. This principle may be applied to various states of facts. 67 Ark. 62; 71 *Id.* 494; 65 *Id.* 333; 15 *Id.* 543; 24 *Id.* 210; 29 *Id.* 544; 35 *Id.* 156; 21 *Id.* 69; 24 *Id.* 269; 25 *Id.* 191; 30 *Id.* 186. The legal import of a writing can not be varied. 99 Fed. 256; 124 *Id.* 695; 141 *Id.* 877; 53 N. E. 256; 124 Pa. St. 1; 96 S. W. 544; 74 *Id.* 689. The court erred in ignoring the point that if the note was given for an interest in a patent right defendant was entitled to a verdict in his favor. 52 Ark. 545; 76 *Id.* 227; 77 *Id.* 261; *Id.* 201. If the consideration for the note was a worthless patent, no recovery could be had upon it. 17 Ark. 9; 53 *Id.* 512.

*Moore, Smith & Moore,* for appellee.

Evidence may be given of a consideration not mentioned in a deed, provided it be not inconsistent with the consideration expressed in it. 112 U. S. 431; 55 Ark. 112; 27 *Id.* 514; 92 N. Y. 535; 75 Ark. 93; 71 *Id.* 497; 54 *Id.* 196; 52 *Id.* 42. All contemporaneous writings relating to the same subject matter are admissible in evidence. Greenl. on Ev. § 283.

*Rose, Hemingway, Cantrell & Loughborough,* in reply.

The rule that a writing cannot be varied by substituting prior negotiations is not a mere rule of evidence, but one of substantial right. Wig. on Ev., § 2400; Dev. on Deeds, 850 a; 17 Minn. 292; 7 Mart. (U. S.) 231; 105 S. W. 174; 38 Ark. 334; 52 *Id.* 389. "Carry his interest" did not necessarily mean a loan. 3 Bosw. 250; 40 Ind. 102; 28 Fed. 179.

WOOD, J., (after stating the facts.) In *McDonough* v. *Williams,* 77 Ark. 261, 272, this court said: "The terms of the contract of sale were evidenced by the letters and telegrams, and it was the duty of the court to construe the contract and declare its terms to the jury." So here the contract between appellant and Urquhart was evidenced by the letters and tele-

grams which passed between Miller, representing Urquhart, and appellant. These show beyond question that appellant was to have a fourth interest in the purchase from the beginning, that he did not have the money to "go into" the transaction of the purchase from the Huennekes, and that Urquhart agreed "to carry," *i. e.,* to "advance" the money to pay for his interest. This is the ordinary meaning of the term "carry" when used in such transactions. *Pickering* v. *Demerritt,* 100 Mass. 416; *Price* v. *Gover,* 40 Md. 102; *Saltus* v. *Genin,* 3 Bos. (N. Y.) 250. The court did not err in giving that meaning to the word "carry" in the connection it was used here. Ex parte *Conway,* 4 Ark. 302, 367; *Stevens* v. *State,* 3 Ark. 71. See also *Brown* v. *Spilman,* 155 U. S. 670. The after transactions of transferring the one-fourth interest from Urquhart to appellant and the execution of the note by appellant to Urquhart were intended to evidence the consummation of what the parties had agreed upon when the purchase of the patent right was effected. As the oral evidence shows, these latter instruments were executed on the 7th of December and dated back to October 31, the day the purchase was made, in order to make them conform to that date. Therefore, in reality they should all be considered together, as contemporaneous writings. They were intended by the parties to be so considered. 1 Greenleaf on Ev., p. 283.

These writings, and the uncontradicted oral evidence, not in conflict, but in explanation thereof, showing the nature of the transaction from the beginning, lead to the irresistible conclusion, that the purchase of the patent right was made for Urquhart, Miller and Mann. Miller conducted the negotiations for them. The title was taken in the name of Urquhart because he advanced the money to pay for same. But, according to the understanding between Miller and Mann, before any transfer was made from the Huennekes to Urquhart, Mann was to have a fourth interest in the purchase. He was a purchaser, in other words, from the Huennekes to the extent of a one-fourth interest, and Urquhart was to pay for this fourth interest for him. The legal effect of this was that Urquhart simply held the title of the fourth interest for Mann. We do not find that appellant himself, in his testimony, denies that he was to have a fourth interest in the purchase from the Huennekes. His

version of the contract does not differ from that of Miller's, except he contends that Urquhart was to pay for his fourth interest in consideration of the services he should render thereafter in a sale of the patent right for the State of Missouri. He says that the reason for executing the note was (quoting his testimony) "that Mr. Urquhart should have some evidence of the principal, my interest in the matter, so if the patent was sold I would not come in for part of the principal it was sold for." This evidence, we think, is in perfect harmony with the testimony of Miller, and does not establish a different contract from that shown by Miller's testimony and the writings. It simply shows that Urquhart desired to get his pay for the principal, the money he had advanced for Mann, before the latter should receive any profits. The whole case is simply this: Miller and Mann were desirous of securing the patent right for the territory of Missouri to the sand lime process of making brick. Visions of wealth to be realized from this in the near future loomed before them. They entered upon the project with high hopes but no money. Urquhart, a capitalist, and the father-in-law of Miller, was induced by the latter to furnish twenty-five thousand dollars, the purchase money, and the patent right was purchased for Miller, Mann and Urquhart. The understanding was that Mann was to have a fourth interest, and that Mr. Urquhart should "carry" him for that amount. It is doubtless true that Miller and Mann thought, when the note in suit was executed, that a sale of the territory in a short while would be effected, and that Urquhart would from this receive his principal, the twenty-five thousand dollars, and that in this way the note of Mann would be paid. Accordingly they fixed the time for the payment of the note when they expected their dreams to be realized. The note came due, the interest was paid by Mann, and the time extended to meet, as they hoped, a sale of the patent right for the territory of the State of Missouri, and again the note matured and the interest was paid by Mann and the time extended. The note again matured, Mann and Miller did not succeed in selling the Missouri territory, and Mann has refused to pay the note. The estate of Urquhart demands the money, and should have it. There was no error in the instruction of which appellant can complain.

Affirmed.