**WINEMILLER v. PAGE et al.**

No. 7958—Opinion Filed June 10, 1919.

Rehearing Denied Sept. 9, 1919.

(Syllabus by the Court.)

1. **Evidence—Parol Evidence—Explanation of Technical Terms.**

Where a written instrument contains words or expressions which are of a technical nature, being connected with some art, science, or occupation, and unintelligible to the common reader, yet susceptible of a definite interpretation by experts, parol evidence is admitted for the purpose of explaining the language used and thus effectuating the intention of the parties through the medium of their own language.

2. **Customs and Usages—Necessity of Pleading.**

The case at bar is governed by the rule of law relating to the meaning of technical terms or phrases used in a particular industry or business, and not by the rule invoked by counsel, which requires the custom of a particular place and local commercial usages to be pleaded before they can be proved.

3. **Appeal and Error—Evidence—Review.**

The rule is well settled that in actions of purely equitable cognizance the Supreme Court will not disturb the findings of fact of the trial court, unless they are against the clear weight of the evidence.

**4. Oil and Gas—"Carrying" Contracts—Findings of Court—Evidence.**

Record examined, and held, that the findings of the trial court as to the terms of the contract sued upon, and that the phrase "carried for an eighth" has a well-defined meaning in the oil business, and as to what this phrase means among persons familiar with the oil business, are not against the clear weight of the evidence, and are not contrary to law.

Error from District Court, Creek County; N. A. Gibson, Special Judge.

Action by John H. Winemiller against Charles Page and others. From judgment for defendants plaintiff brings error. Affirmed.

Phil D. Brewer, Charles B. Rogers, and Fred A. Fulghum, for plaintiff in error.

Poe, Hindman & Lundy, for defendants in error Page and Omega Oil Co.

Rice & Lyons, for defendant in error March Oil Co.

KANE, J. This was a suit in equity, commenced by John H. Winemiller, plaintiff in error, plaintiff below, against Charles Page, the March Oil Company, and the Omega Oil Company, defendants in error, defendants below, for the purpose of enforcing certain equitable rights which it was claimed arose out of a certain oral contract pertaining to the procurement of several oil and gas leases, entered into by and between John H. Winemiller and one Nicholas Snyder. The cause was tried before Special Judge N. A. Gibson, who made special findings of fact and conclusions of law in favor of the defendants, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The plaintiff's action was based upon the theory that his contract with Snyder, for whom he agreed to procure certain oil and gas leases in the vicinity of Tulsa, was entered into in such circumstances as to create either (a) a joint adventure; (b) what is called in mining countries a grubstake contract; or (c) the relation of mining partners between himself and Snyder; or (d) a trust by operation of law—and that in either of these events the effect of the contract was to vest in the plaintiff an equitable interest in the leaseholds, although the leases were taken in the name of Snyder, which was enforceable against the defendants; they having purchased the leases from Snyder or his assigns with notice of the contract. After hearing the evidence the trial court found as a fact that the contract entered into between Winemiller and Snyder was as follows:

"That in the year 1906 the plaintiff, John H. Winemiller, by parol agreement made with Nicholas S. Snyder, agreed to procure for the said Snyder oil and gas leases upon lands in the vicinity of Tulsa; that as a consideration for the said services Snyder agreed to pay Winemiller's reasonable and necessary expenses and to carry said Winemiller for a one-eighth interest free in the first well to be drilled upon each tract of land so leased, and to further carry the said Winemiller for a one-eighth interest in all subsequent wells drilled upon said lands; that the expenses of drilling all of said wells by the terms of said agreement were to be paid by the said Snyder if nonproducing or out of the production from said leases."

After finding that the plaintiff procured for Snyder certain oil and gas leases upon various tracts of land in accordance with the terms of this contract, which were subsequently assigned to the Omega Oil Company, who in turn assigned part of them to the March Oil Company, the court made the following conclusions of law:

"(1). That the plaintiff has no title or interest in and to the leasehold estates for oil and gas described in the plaintiff's petition.

"(2) That the contract by parol entered into by the plaintiff and Nicholas Snyder, in so far as it contemplated the assignment and conveyance to the plaintiff of any interest in said leasehold estates, or any other interest other than a share in the profits derived from the operation thereof, was not enforceable.

"(3) That the words 'carried for one-eighth,' or 'one-eighth carried,' have well-defined and well-established meanings among the oil men and in the oil country in Oklahoma, and were used by Snyder and the plaintiff in their ordinary meaning, and that as used by them they operated to confer upon the plaintiff no interest in the leasehold estates proposed to be taken and which were subsequently taken for Snyder by the plaintiff, but only passed to him a contingent interest in the profits which might arise from the sale or operation of the said leases, after the payment of the cost of procuring the same leases and the operation of the same.

"(4) That Snyder, as the holder of the said leases, had a full and complete right at all times to exercise his own judgment as to whether he would drill wells upon said leases, or would assign and transfer said leases, and he was vested with full and complete power to sell, transfer, and assign said leases without the consent of said plaintiff, and his assignment to the Omega Oil Company operated to confer upon that company a full and complete title to the said leases, free and clear of any claim and demand of the plaintiff."

In view of the conclusion we have reached as to the conclusiveness of this finding of fact and of these conclusions of law, it will not be necessary to notice any of the numer-

ous assignments of error presented for review, except such as directly question their correctness.

Under the heading "Discussion of Specific Errors," counsel for Winemiller say in their brief:

"The eighth, ninth, and tenth assignments of error all raise practically the same question; i. e., the meaning of the words 'carried for one-eighth,' or 'one-eighth carried,' and as to whether or not these words had a settled meaning among the oil men in Oklahoma, and as to whether or not plaintiff, at the time of entering into the contract with Snyder, understood the meaning of the words as found by the court."

Under this heading counsel contends: (1) That, the defendants not having pleaded the usage and custom which the court found fixed the meaning of the words "carried for one-eighth" or "one-eighth carried," the evidence on that point was erroneously admitted; (2) that the findings of fact and conclusions of law of the trial court upon this point are against the clear weight of the evidence and are contrary to law. Whilst it is true, as a general rule, that the custom of a particular place and local commercial usage must be pleaded (12 Cyc. 1097), we are unable to sustain either of these contentions.

The second amended petition filed by the plaintiff, the petition upon which the case was tried, contains no averments from which the defendants or their attorneys could anticipate what the precise terms of the oral contract sued upon would be shown to be, or that the plaintiff would assert that a joint adventure, or a grubstake contract, or a trust by operation of law, would arise out of a contract by the terms of which he was to be "carried for one-eighth." The testimony of Winemiller was that he was to be "carried one-eighth interest," and this phrase occurs again and again in the testimony of all of his witnesses, who testified as to the terms of the contract. If, as we believe, this phrase is unintelligible to persons not familiar with the oil business, and particularly that branch of it pertaining to procuring oil and gas leases, then the plaintiff himself presented a contract for construction which required the evidence of experts to aid the courts in determining its meaning. It is the duty of the courts to construe contracts, whether oral or written, and where words or phrases of a technical nature connected with any art, science, or occupation are used, witnesses familiar with such art, science, or occupation may be called for the purpose of explaining such language. We

think the applicable rule of law is well stated in 17 Cyc. 685, as follows:

"Where a written instrument contains words or expressions which are of a technical nature, being connected with some art, science, or occupation, and unintelligible to the common reader, yet susceptible of a definite interpretation by experts, parol evidence is admitted for the purpose of explaining the language used, and thus effectuating the intention of the parties through the medium of their own language."

The same authority (17 Cyc. 80) states the rule in other words as follows:

"Persons familiar with any art, calling, trade, etc., may state whether a word or phrase used in it has acquired a technical meaning, and, if so, what it is in any place where the significance is relevant."

Under the doctrine thus announced evidence has been admitted to explain the meaning of "accounts" (Nat. Bank v. Purifer Co., 102 Mich. 462, 60 N. W. 981; Waldheim v. Miller, 97 Wis. 300, 72 N. W. 869); "all accounts" (Hawley v. Bader, 15 Cal. 44); "current funds" (Haddock v. Woods, 46 Iowa, 433); "taking stock" (Ginnuth v. Blankenship, etc., Co. [Tex. Civ. App.] 28 S. W. 828); "proceeds of sales" (Soles v. Saitta, 119 N. Y. Supp. 253); "bonus" (Smith v. Crockett Co., 85 Conn. 282, 82 Atl. 569, 39 L. R. A. [N. S.] 1148); and various other reported cases show that this doctrine has been applied to almost every term used in commercial transactions. In the case of Mann v. Urguhart. 89 Ark. 239, 116 S. W. 219, the court held that the ordinary meaning of the term "carry," when used in commercial transactions, was to advance the money to pay for whatever interest might be acquired, and held that the court did not err in giving that meaning to the word "carry" in the transaction under consideration.

The case at bar, it seems to us, should be governed by the rule of law relating to the meaning of technical terms or phrases used in a particular industry or business, and not by the rule invoked by counsel, which requires the custom of a particular place and local commercial usages to be pleaded before they can be proved.

Upon their second contention, under this heading, counsel say that, inasmuch as the only testimony introduced on the trial tending to prove the contract was given by the plaintiff himself, therefore it follows that the trial court must have predicated his findings solely on the testimony of Winemiller, and the Supreme Court should also look only to the testimony of Winemiller in

order to ascertain what kind of a contract or agreement was entered into. We are unable to entirely agree with this contention. It is true that Winemiller testified positively that, after it was discovered that all the leases taken covered restricted Indian lands, Snyder agreed that he would assign Winemiller his one-eighth interest in the leases after they were approved by the Secretary of the Interior. It must not be lost sight of that this purported conversation did not occur at the time the contract was entered into, and that it was offered, not for the purpose of proving the contract, but for the purpose of showing that Snyder understood the contract to mean that Winemiller was to have a one-eighth interest in the leases themselves. On the other hand, this conversation is denied by the testimony of Snyder, who testified that he merely hired Winemiller to procure the leases for him, for which service he agreed to pay a stipulated sum and expenses. The trial court made no specific finding on the issue of fact raised by this particular testimony, but it seems to us that the finding hereinbefore set out resolves the question in favor of the defendants. Winemiller himself constantly reiterated in his testimony that he was "working for Snyder," and that he was to be "carried an eighth interest," and his statements to the effect that by his contract with Snyder he was to have an eighth interest in the leaseholds, seem to us to be more in the nature of conclusions as to what the contract meant than statements of fact. Two of the witnesses called by Winemiller, who were present when the contract was made, also testified that Winemiller was to be "carried for an eighth." Jack Wharton, one of these witnesses, testified in effect as follows:

I knew Mr. Snyder in the East. I met him here, and he wanted me to take some leases for him. I told him I was not in position to do anything, but that I knew Mr. Winemiller, who would be a pretty good man to get to take some leases for him, and told him I would see Winemiller and bring him around and introduce him, and Mr. Snyder said, "All right." I met Mr. Winemiller, took him to the Robinson Hotel, and made him acquainted with Mr. Snyder, and they talked about the country mostly in the vicinity of Glenn Pool. Snyder told Winemiller that he would like to get him to take up some stuff for him, and said he would pay him for this work. Winemiller told him that, if he did any work for him, he would rather have some interest in some stuff; that it would probably do him more good than the money he could get for the work; and Snyder told him he would do

that with him, and told him that he had done some business of that kind with me, and that he would take Winemiller in on about the same terms that he had dealt with me in the East, and they agreed that that would be all right. Snyder told Winemiller that he would furnish him expense money to get around over the country and do this traveling, and that he would make arrangements with some liveryman, so that if he did any driving out of Tulsa he could get teams any time he wanted them, and this man was to make out a bill at the end of the month and send it to Snyder. Snyder told Winemiller that in the leases he was operating for me in the East that he carried me a one-eighth in these leases. There were some leases that he told him looked better than others, and he would carry me for more wells on some properties than he would on others. It would be according to the outlook. If the wells would make so much when brought in, he would carry me in the second well, etc. If the wells were as low as 50 barrels, I was supposed to carry my own part, and he would go ahead and operate it, and hold my part of the oil to pay these expenses for operating. The conversation that I have been stating, he was telling this to Winemiller, so that Winemiller would know about what kind of a deal that he had made with me, and that he was taking him in on the same line that he and I had worked together.

On cross-examination the witness was asked if at his first conversation Mr. Snyder did not say to him, Winemiller, and McKeever "that anything all three of you boys bring in that is good, I will carry you for an interest in it, if I take it," to which he replied, "Well, I don't know, but he probably said that." The terms that Winemiller and Snyder talked about were the same kind that Mr. Snyder had with me in the East. Mr. Snyder was to carry me a one-eighth interest as long as he could drill wells that would make better than 50 barrels, and ahead and operate it and hold my part of the when they came in at less than 50 barrels I was to pay my interest, but he was to go oil to pay my part of the expenses. Mr. Winemiller was to have one-eighth interest, but I would not say positively whether it was to be carried clear through, or whether it was just in one well."

Mr. McKeever testified in substance as follows:

I remember a conversation had between myself and Mr. Winemiller and Mr. Snyder along about December, 1906. There were four of us together. Mr. Snyder made the proposition that any leases we would bring to him that he would carry us one-eighth. Mr. Whorton, Mrs. Winemiller, Mr. Snyder, and myself were present when this conversa-

tion was had some time in December, 1906. Mr. Snyder said "that anything you boys bring in I will carry you an eighth interest in it."

It seems to us that this testimony presents a clear case for the introduction of expert evidence by persons familiar with the oil business, for the purpose of explaining the meaning of the phrases "one-eighth carried," or "carried for an eighth."

The remaining question for consideration is: Was the finding of the trial court as to the meaning of the phrase, "carried for an eighth," against the clear weight of the evidence? For unless it is, it is binding on this court on appeal. The rule is well settled that in actions of purely equitable cognizance the Supreme Court will not disturb the findings of fact of the trial court, unless they are against the clear weight of the evidence. As to the meaning of this phrase Mr. Crosbie, and Mr. Watts and other experienced oil men all agreed with Mr. Crosbie, who testified:

"That the phrase 'carried for an eighth' had a well-known meaning in the oil regions of Oklahoma and that a man that carries an eighth has no responsibility at all of any indebtedness or anything, and you just merely carry him an eighth, relieving him from the responsibility of any debts, and if there is any profits or the property is sold. he gets his part, but it gives you the opportunity to do as you want to with the property."

It is true that several witnesses testified to the contrary, but in our judgment the testimony pro and con on this point was so evenly balanced that it cannot be said with any degree of fairness that the findings of the trial court were against the clear weight of the evidence. As there is no contention that the plaintiff would be entitled to recover against the parties to this action, who were not parties to the contract, unless he succeeded in establishing his contract substantially as alleged in his petition, no useful purpose would be subserved by carrying the inquiry further.

The trial court having found upon sufficient proof that by the terms of the contract Winemiller acquired no equitable interest in the leaseholds, the judgment in favor of the defendants must be upheld.

All the Justices concur, except OWEN. C. J., and SHARP and JOHNSON. JJ., who dissent.