## SMITH et al. v. FERGUSON et al.

No. 14413—Opinion Filed Dec. 4, 1923.

(Syllabus.)

1. **Appeal and Error—Review—Insufficiency of Evidence—Objections Below—Necessity.**

This court reviews errors of law only, and where an assignment of error is that the evidence was insufficient to sustain the verdict of the jury in an action at law, its alleged insufficiency must have been presented first to the trial court by demurrer to the evidence or motion for directed verdict. If such was not done, its sufficiency as a matter of law cannot be considered here.

2. **Evidence—Parol Evidence to Affect Written Contract.**

Courts must give effect to contracts as made by the parties, unless they fall within inhibited classes, and cannot alter or change them; and the general rule is that the oral negotiations preceding and contemporaneous with the execution of a contract in writing are merged into the written instrument; but where the binding force of the written contract is sought by the obligors therein to be avoided by reason of fraudulent representations as to that for which the contract was made, parol evidence as to the conversations, circumstances, and transactions leading up to the written contract, are competent.

3. **Same—Explanation of Technical Terms.**

While words technical or peculiar to trades, occupations, or businesses, and therefore their meaning not generally known, may be explained by parol when necessary to give proper meaning to a contract in writing, this rule does not extend to such an explanation thereof as would amount to a construction of the contract different from that evidently intended by the parties.

4. **Appeal and Error—Questions of Fact—Construction of Contract.**

Where a contract in writing is the basis of the judgment sought, and the same consists of two or more instruments executed at different times, the same should be considered together by the court in arriving at the intent of the parties, and interpretation thereof is for the court. The contract sued on examined, and held, that the construction placed thereon by the trial court did no violence to the evident intent and purpose of the parties, and that the defense of fraud in its procurement being found on

conflicting evidence by the jury against the defendant, the allegations of error based thereon are not well taken.

**5. Trial—Withdrawal of Issues on Failure of Evidence.**

When the defense of fraud is interposed to a suit to recover on a written contract, and by way of cross-petition the defendants seek to recover against the plaintiffs damages alleged to have resulted to them by reason of plaintiffs' fraud, it is not error for the court to withdraw such issue from the jury when there is no competent evidence from which the jury could fix the amount of damage done the defendants, if the jury found the issue of fraud in their favor.

**6. Appeal and Error—Mines and Minerals—Lease Contract—Judgment—Affirmance.**

Record examined, and held, that the written contracts were correctly interpreted by the trial court, that the defensive issue was submitted to the jury by proper instructions, and that the judgment based on the verdict in favor of the plaintiffs should be affirmed.

Error from District Court, Ottawa County: S. C. Fullerton, Judge.

Action by R. W. Ferguson and others against Wesley M. Smith and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

A. Scott Thompson and A. G. Croninger, for plaintiffs in error.

E. C. Fitzgerald, for defendants in error.

BRANSON, J. This is an appeal from the district court of Ottawa county, Okla. The appellants were the defendants in the trial court. The parties are referred to here as plaintiffs and defendants, as they bore this relation in the lower court. The plaintiffs are R. W. Ferguson, Haden Osborn, H. P. Baker, J. F Mackey, Chris Wagner, Good Wagner, C. E. Prather, and Geo. Williams a copartnership, doing business under the firm name and style of Odessa Mining Company, the individual plaintiffs being residents of Missouri but having complied in all respects with the law of this state touching the formation of copartnerships, and the right to carry on business as such. The defendants are Wesley M. Smith, George A. McConnell, and J. F. Robinson, executor of the last will of James E. Pottorff, deceased.

This action was begun by the said plaintiffs in the district court of Ottawa county on the 15th day of April, 1922, and the right of the plaintiffs to recover is based upon a contract for a mining lease and a supplement thereto, in which contract and the supplement thereto, the defendants acquired the mining rights in and to the west half (W.½) of the southeast quarter (S.E.¼) of the northeast quarter (N.E.¼) of section eighteen (18) in township twenty-nine (29) north, range twenty-four (24) east of the Indian Meridian in Ottawa county, Okla,, in the manner hereinafter set forth.

Stripped of the verbiage of the lengthy pleadings and contracts, the transaction out of which plaintiffs secured their judgment in the trial court was as follows:

On the 19th day of February, 1918, and for some time prior thereto, the plaintiffs were the owners of a mining lease on the above described land, and on said last named date the said defendant George A. McConnell entered into a contract for the purchase of said lease with said plaintiffs through their representative, the said George Williams, which was afterwards formally ratified by the other plaintiffs composing the copartnership; under which said contract the said McConnell, in consideration of his assuming the obligations specifically specified therein, acquired "the right to move machinery upon and prospect and mine for ores" on the above described land "for the term and period beginning at this date and ending at midnight on the 20th day of February, A. D. 1927"; the said McConnell covenanting and agreeing to "thoroughly prospect said described land by sinking drill holes and shafts on said land, to prove the extent of the ore, and the richness thereof, and to develop the same and give to the parties of the first part a correct record and log of the holes drilled as soon as completed by delivering same at their office at Miami, Oklahoma."

(This quotation is taken from the contract.)

The said McConnell further agreed that from the ores sold from said land, payment should be made to the plaintiffs of 17½ % as their royalty. The said contract further specifically providing that the parties of the first part (the plaintiffs) herein covenant and agree that in the event the party of the second part (McConnell), his heirs or assigns, shall discover or cause to be discovered upon said described land, ores or mineral in substantial or paying quantities, and shall work, mine and develop the same, and shall proceed to carry out the object of this indenture, or contract, by erecting or building on said described property one or more modern mills, or such other crushing, cleaning, reduction, or concentrating works as may be necessary to put in marketable condition the ores and minerals

mined and raised on said land, then and in that event, it is hereby agreed and understood that the said parties of the first part shall make, execute and deliver to the said party of the second part, a mining lease, * * * beginning at the date thereof, and ending at midnight on the 20th day of February, A. D. 1927.

And in event the said party of the second part (McConnell), his heirs or assigns, do not prospect, mine or develop said land, or cause same to be done, as specified in said contract, his rights shall thereby become of no force and effect.

In addition to the above mentioned royalty plaintiffs were to receive from the ores taken from said described tract of land, said contract provided, haec verba, as follows:

"The bonus consideration for this contract is to be $30,000 to be paid in the following manner: $4,000 cash at the delivery of these presents, $4,000 to be paid in 30 days thereafter, $5,000 paid when shaft is in ore, and the balance of $17,000 to be paid in installments of $4,250 each 30 days thereafter until fully paid."

Take notice that this original contract was made by the plaintiffs with the defendant McConnell solely. McConnell accepted possession of said land and began the carrying out of his obligations assumed thereunder on the 19th day of February, and continued until the 3d day of December, 1918, during which time he had expended in prospecting for ore on said tract the sum of $14,743.-51, and in order to share his burdens of the further and complete performance of his contract, and in consideration of their paying a like sum to continue the prospecting for and equipment of said tract for the mining of lead and zinc, etc., McConnell on said last named date entered into a contract with his codefendants, W. M. Smith and J. E. Pottorff, since deceased, but who is represented herein by the defendant Robinson, executor of his last will and testament, whereby the said Smith and Pottorff, for a one-half interest in said tract of land described in the first above mentioned contract, agreed to expend the same amount of money heretofore expended on said lease by defendant McConnell.

Default being made by the said defendant McConnell and his said selected partners in said enterprise in carrying out the said contract above mentioned, they entered into negotiations with the plaintiffs to supplement the original contract relative to the cash bonus to be paid. This supplement to the original contract was made the 24th day of January 1919, at which time $8,000 of the $30,000 bonus agreed to be paid had

been received by plaintiffs, and the payment of the remaining $22,000 of the bonus was by the supplemental agreement provided for as follows:

"The parties of the first part (that is, the plaintiffs) agree to receive the above payments under this supplemental agreement as follows: $5,000 is to be paid to the parties of the first part by the parties of the second part when their mill or concentrating plant is ready for operation, then $4,250 per month thereafter until the $22,-000 has been paid.

"The parties of the second part agree to pay six per cent. interest on the $5,000 from the time ore is encountered by the parties of the second part in paying quantities and their payments thereafter as they become due are to draw six per cent. interest until paid."

No payments being made under this contract as so supplemented, this suit was instituted to recover the $22,000. The defendant McConnell, joined by his selected partners, W. M. Smith and J. F. Robinson, the executor of the last will of J. E. Pottorff, answered the petition, admitted the execution of the contracts abstracted above and pleaded that the plaintiffs had perpetrated a fraud upon the defendant McConnell, and that he, still relying upon the fraudulent representations made by the plaintiffs at the time of the original contract, February 19, 1918, was made, on December 3, 1918, transmitted the fraudulent representations as to amount and quality of the ore found in certain holes dug by plaintiffs upon which he had relied, as an inducement to his codefendants, said fraud being pleaded by the defendant, and concluding:

"* * * That relying upon the statements made by said plaintiffs and the delivery of the logs and assays by said plaintiffs as aforesaid, the defendants proceeded to carry out the contract for sublease which they held with said plaintiffs, and have sunk a shaft on said premises to a depth of 215 feet. * * * That in carrying out this prospecting work * * * these defendants have expended large sums of money upon the development of said property and in their attempt to find a body of ore, lead or zinc, in paying quantities, but up to this date they have failed to find such a body of ore, and that at no time during such period of development have the defendants found ore of a sufficient high percentage of recovery that could be marketed for the actual cost of preparation of the same for said market. That although large sums of money have been expended upon this property upon the representations as made by these plaintiffs, no body of ore has been found that would justify the building of a mill or concentrating plant. That defendants say that

the representations made by said plaintiffs as heretofore stated concerning the richness of the ore bodies as shown by the prospect drill was false; that the logs and assays showing rich discoveries of ore in said holes were false, and were known to be false by said plaintiffs. * * * That they have been caused to thereby expend large sums of money in the development of said property and payment upon the purchase price thereof, and that these defendants have been greatly damaged thereby. The defendants further say that relying upon the said statements, logs, records, and assays as aforesaid, they have paid to the plaintiffs the sum of $8,000 as a part of the purchase price. The defendants further say that in addition to the payment on the purchase price as above stated, these defendants, relying upon the aforesaid fraudulent statements, logs, and assays, have expended in attempting to develop this property and establish a mine of lead and zinc ores thereon, the sum of $76,709.31. That they have received from the sale of ores taken while so prospecting the sum of $15,822.63, and have paid thereupon to these plaintiffs a royalty of $2,029.65, leaving a net gross for receipts from sales of ore to these defendants of $13,792.98. * * * The defendants therefore aver and state that as per the contract sued upon and attached to the plaintiffs' petition, the condition has not arisen which matures and makes due the purchase price sued for herein, and that by reason of the fraud of said plaintiffs upon these defendants as stated above these defendants have been damaged in the sum of $70,916.33, for which these defendants should have judgment against the plaintiffs."

Then follows the prayer that plaintiffs take nothing, and that the defendants recover judgment against the plaintiffs for the amounts set out above.

The issues thus raised as to the amount agreed to be paid to the plaintiffs and whether or not it had become due under the terms of the written instruments, and the question of the fraud of the plaintiffs in inducing the defendants to enter into the contracts, were tried to the court and jury, resulting in a verdict in favor of plaintiffs for the sum of $22,000, upon which judgment was entered, and from which judgment and the order of the court overruling defendants' motion for a new trial, the defendants have appealed.

The defendants complain of the judgment, omitting the formal assignments, for:

First. That the evidence was insufficient to support the verdict.

Second. That the plaintiff Ferguson was permitted to testify as to a conversation had with the defendant McConnell just prior to the execution of the contract of February 19, 1918.

Third. That the court erroneously excluded certain competent evidence, to wit, whether exhibits referred to as the logs of holes (or shafts) numbers four, five, and seven, contended to have been the logs delivered to the defendant McConnell at the time defendants pleaded that he (McConnell) was fraudulently induced to enter into the original contract, and that the court erred in refusing to allow the defendants to introduce oral evidence as to the meaning in the said lead and zinc mining district of "a mill or concentrating plant," the theory of the plaintiffs being that these terms had a meaning of use peculiar to the custom or trade of mining and contracting concerning the same, growing out of the common acceptance thereof in the mining business in said district, and that such meaning and use could only be made plain and the intent of the parties ascertained by evidence as to the meaning of the terms, they being technical or trade terms; and that they mean a modern mill.

Plaintiffs in their fourth assignment contend: That the trial court erred in refusing to give certain requested instructions, numbered one, two, three, four, and five, which will hereafter be referred to by numbers.

And Fifth, That the court erred in giving certain instructions which will be more specifically referred to hereinafter.

In the discussion as to whether the assignments of error should be sustained, it must be remembered that this action is based upon a written contract, to which the defendants interposed the defense of fraud in its procurement. That the contract in writing, so far as the plaintiffs are concerned, is the contract made February 19, 1918, with the defendant McConnell, and a supplement thereto made January 24, 1919, between the defendant McConnell and his codefendants, whom he had selected and sold one-half interest in his contract in consideration of their putting up an amount of money equal to that theretofore expended by McConnell in prospecting on said property, with the plaintiffs.

The sufficiency of the evidence to support a verdict cannot be reviewed by this court where the action is at law, unless the sufficiency thereof has been passed upon as a question of law by the trial court. In order for the trial court to pass upon the sufficiency of the evidence, the same must be challenged either by demurrer, motion for directed verdict, or otherwise by the party challenging its sufficiency. Dod-

son & Williams v. Parsons, 62 Okla. 298, 162 Pac. 1090; Reed v. Scott, 50 Okla. 757, 151 Pac. 484; Simpson v. Mauldin, 61 Okla. 92, 160 Pac. 481; Van Arsdale & Osborne Brokerage Co. v. Hart, 62 Okla. 119, 162 Pac. 461. And for these reasons the plaintiffs say that this assignment presents nothing for this court to determine.

On examination of the record, we fail to find that, either at the close of the testimony for the plaintiffs or at the close of all the evidence, any demurrer or motion for a directed verdict on the record was ever presented to the trial court. Following the rules laid down in the above mentioned cases, the first assignment made by the defendants must be concluded against them.

As to the second assignment, to the effect that the court erred in permitting plaintiffs to introduce evidence of the plaintiff Ferguson as to conversations leading up to the execution of the original contract with McConnell, we find on examination of the record that this was merely a recitation by this plaintiff of the conversation that took place with the defendant McConnell prior to the execution of the written instrument, and where the instrument in writing which resulted from the negotiations is sought to be avoided on the ground of fraud, we think that the plaintiff's testimony as to what the negotiations were was competent. Thompson v. Vaught et al., 61 Okla. 195, 160 Pac. 625.

The defendants' third assignment of error complains of the ruling of the trial court in rejecting alleged copies of the logs of certain shafts about which, they plead, plaintiffs made fraudulent representations. On examination of the record we find that there was no testimony produced by the defendants showing who made the alleged logs, whence they came, or that they were furnished to the defendants as correct copies of any purported logs of said shafts. Under this assignment also the defendants plead error because the trial court struck the testimony of one J. F. Robinson, who on interrogation stated that the word "mill or concentration plant" had a peculiar significance in that mining district, and when so used meant a modern mill for cleaning and concentrating lead and zinc ores. His last answer to the last questions relative to the meaning of such terms was, haec verba:

"A. I think that means a modern mill equipped with power and jigs, etc., to concentrate the ore."

This testimony was excluded by the trial court on motion of the plaintiffs.

The defendants appear to have offered this evidence on the theory that these terms, as used in the original contract and the supplement thereto, had a meaning peculiar to the custom or trade of mining, that by common acceptance in that field they meant a modern mill equipped with all electrical and other appliances best adapted for the uses intended; and the defendants contend that this was prejudicial error on the part of the trial court, for the reason that without this explanation, the terms are not intelligible. Winemiller v. Page et al., 75 Okla. 278, 183 Pac. 501; Cleveland v. Mascho, 73 Oklahoma, 175 Pac. 927; C., R. I. & P. Ry. Co. v. Dodson, 25 Okla. 822, 107 Pac. 921.

While the rule is that words used in a contract relating to the ordinary affairs of life are to have that construction which is commonly understood and attached to them by the average man, yet if by usage in contracts or otherwise relating to a particular class of business, the expressions used have acquired a fixed and definite meaning or are technical in their terms and not intelligible to those unfamiliar with the meaning so adapted and acquired, such terms are susceptible of explanation as understood by the parties to the contract by parol testimony. To refute this contention, the plaintiffs contend that to have permitted this kind of evidence would have amounted to more than a definition of the terms used, one would have been tantamount to a construction of the contract which was in writing to the effect that the remaining payments conditioned on the erection of the mill or concentrating plant were not to be made until such was done, and that the undisputed evidence was that there was considerable machinery and equipment, although not measuring up to first-class equipped modern mills for concentrating the ore, already erected by the defendants on the premises.

It must be borne in mind that this matter is only important so far as fixing the date of the maturity of the payments specified in the agreement should be made; the contract making them mature when the concentrating plant, mill, etc., were erected and the evidence showing that such machinery had already been placed upon the lease in question, and the defendants answered admitting that they had concentrated several hundred tons of lead and zinc ore and had sold the same, specifying the amounts received therefor. This interpretation of the language used would have enabled the defendants to have continued to use the less modern equipment and operated the mine without ever building a modern mill, and the payments therefore never fall due. It was a condition precedent, as defendants claim, to the contract obligation to pay the

bonus money. The court interpreted the contract, and we think correctly, that from the undisputed evidence the machinery on the property used by the defendant in concentrating the ore taken from the mine was such an instrumentality as complied with the condition precedent to the maturity of the remainder of the payments of the bonus money.

This contention could not avail defendants as a defense if their contention be true, for this court has held:

"If a debt in fact exists which has all the essentials except fixing a definite time of payment, or if payment is made to depend upon a contingency which does not happen, the law requires payment to be made within a reasonable time." Nations v. Stone, 92 Okla. 18, 217 Pac. 1031.

So that it must clearly appear that had the words used meant a modern mill instead of the concentrating plant as erected by the defendants on the lease, the failure to erect the modern mill would only have operated as a matter of law to mature the obligation fixed by the contract within a reasonable time, and from the date, supra, this suit was brought, it appears that the plaintiffs had indulged the defendants at least a reasonable time.

The fourth assignment of defendants goes to the refusal of the trial court to give certain instructions in number five, which the defendants requested. The first requested instruction, abstracted, was to the effect that ore in paying quantities meant sufficient in quantity and richness that it would justify the expenditure necessary to erect a mill or concentrating plant and that the profits therefrom over and above the sums required to be expended in the finding of such deposits, etc., would leave a reasonable profit to the investor.

We deem it unnecessary to discuss this assignment further then to say that under the interpretation of the written contracts by the trial court the question of whether or not ore was found in paying quantities was only determinative of the date when interest on the deferred payments should begin to run, and the jury rendered no verdict for interest; and finding that the interpretation of the contract by the trial court was correct, the defendants could not be prejudiced by the refusal to give this instruction.

The next requested instruction was to the effect that if the jury found ore had not been found in paying quantities, the plaintiffs could not recover. This instruction so requested by the defendants went to their theory of the case that the condition of the payments rested upon finding ore in paying quantities. This was not the construction placed on the contract by the trial court, and to have given such an instruction would have been at variance with the court's interpretation of the agreement, which we think was correct.

The third requested instruction went to the same proposition as the matters discussed, supra, in the defendants' third assignment of error, and we think the discussion thereof set out above is sufficient.

The defendants concede that the requested instructions' four and five and nine were practically given by the trial court, with the exception that the trial court refused that part of requested instruction No. 4 to the effect that if the defendants had paid any money to the plaintiffs under the contract and the same was procured by fraud. then the defendants would be entitled to recover as against the plaintiffs for the money paid the plaintiffs and the monies paid in searching for, developing, and equipping the properties and the royalties paid on the ore mined less the total proceeds derived from the sale of the ore therefrom and actual salvage value of the equipment upon said property.

This instruction was not given by the trial court, for the apparent reason that there was no evidence introduced by the defendants from which a measure of damage could be ascertained and fixed by the jury on defendants' cross-petition, even had the jury found the allegation of defendants' answer as to fraud to be true.

If the contract had been procured by fraud as pleaded by the defendants, the proper measure of damage would have been the loss sustained by the defendants on account of the transaction which they were fraudulently induced to enter, but that could only have been arrived at by showing the amount of money expended, the amount of money received from the profit, and the value of the property still held and claimed by the defendants, which was not done.

The fifth assignment made by the defendants goes to certain instructions given by the court, six in number, the first one of which instructed the jury that, under the uncontradicted testimony in the case, the plaintiffs were entitled to recover from the defendants the amount of $22,000, unless the jury found the contract was procured by a fraud, as set out in subsequent instructions.

This instruction was an interpretation of the contract in the light of the competent evidence before the court, and we think was correct. The contracts show on their face

that the original made with the defendant McConnell by the plaintiffs was a sale of the right to go upon this property and prospect, the bonus consideration being $30.000, $8,000 of which was paid, and McConnell expended between February 19th and December 3, 1918, approximately $15,000, when he, the defendant McConnell, induced the other defendants to take a one-half interest in the property and expend a like sum in consideration therefor and all of the defendants, on January 24, 1919, entered into the supplementary agreement modifying the original only to the extent and manner of paying the remainder of the $30.000 bonus money, and a fair interpretation of the agreement is that it was an unconditional obligation but the deferred payments to draw interest, however, being predicated upon finding ores in paying quantities.

The next instruction given by the court of which serious complaint is made is that the court instructed the jury that the issue of alleged damages sustained by the defendants is withdrawn from consideration for the reason that the evidence produced by the defendants, in the judgment of the court, would not warrant the submission of this issue. As stated above, the evidence was insufficient, even had the jury found fraud in the procurement of the original and supplemental contract, to have returned an intelligible verdict as to any damages the defendants sustained.

Viewing the case as a whole, the testimony of the defendant McConnell showing that he had been engaged in the mining business of this character for six years and that he from February 19th to December 3, 1918, had been prospecting on the lease in question, and at that time no complaint of any alleged fraud of the plaintiffs who had been out of possession for nearly a year was made; and that he was willing to induce the other defendants to join the enterprise with him, and the venture not proving as profitable as persons engaged in mining trades hope and anticipate at all times, the plaintiffs agreed to a further tolerance in payment of the bonuses specified in the original contract, and failing for more than two and a half years to make the payments, plaintiffs were driven to bring the suit for the sale price of the lease. The original contract showed that it was made for the purpose of prospecting by the defendant McConnell for lead and zinc ores, and it is beyond the realm of probability that anything other than a righteous verdict was rendered by the jury of Ottawa county, Okla., in favor of the plaintiffs, who were citizens of the state of Missouri, as against defendants, residents of the same county as the jury.

That the interpretation given to the written instruments by the trial court was the fair and correct interpretation under all the surroundings, and that any other interpretation would have stricken down the intention of the written instruments and deprived the plaintiffs of the benefits of the contract.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and KANE, KENNAMER, and HARRISON, JJ., concur.